STATE OF NORTH CAROLINA v. JOE CEPHUS JOHNSTON, JR. AND MORRIS WAYNE JOHNSON

No. 200A89

(Filed 25 June 1992)

**1. Homicide § 244 (NCI4th) — first degree murder — sufficiency of evidence of premeditation and deliberation**

The State presented sufficient evidence of premeditation and deliberation to support defendants' convictions for first degree murder where the evidence tended to show that, after defendants and their group shouted vulgarities at the victim and his two female friends in a nightclub parking lot, the victim attempted to leave; one of the members of defendants' group then hit the victim's vehicle with a cinderblock; the victim got out of the car and knocked this person to the pavement, but then let him up and told him that he and his friends wanted to be left alone; this person ran back to the others, and the group started after the victim; as they approached the car, the victim stood alone to meet them and to defend himself and his friends; the two defendants then made a con-

**STATE v. JOHNSTON**

[331 N.C. 680 (1992)]

certed attack on the victim; during the fight, the first defendant pulled out a knife and stabbed the victim; the second defendant used a boxcutter during the course of the fight, which was found ten to fifteen feet from the victim's body; after the victim was rendered helpless, the first defendant continued to strike him; and the two defendants then fled the scene. This evidence was sufficient to support jury findings of an absence of provocation on the part of the victim, the dealing of lethal blows by the defendants after the victim had been rendered helpless, and a killing accomplished in a brutal manner through the infliction of numerous mortal wounds.

**Am Jur 2d, Homicide §§ 52, 246, 316, 454.**

2. **Constitutional Law § 344 (NCI4th) — capital trial — private bench conferences with prospective jurors — denial of right to presence at all trial stages**

The trial judge violated the right of defendants to be present at all stages of their capital trial when he conducted unrecorded private bench conferences with prospective jurors and excused numerous prospective jurors after these conferences. The State failed to show that the exclusion of these capital defendants from this stage of their trial was harmless beyond a reasonable doubt where the record does not reveal the substance of most of the trial court's private discussions with the prospective jurors who were excused. Art. I, § 23 of the N.C. Constitution.

**Am Jur 2d, Criminal Law § 913.**

**Validity of jury selection as affected by accused's absence from conducting of procedures for selection and impaneling of final jury panel for specific case. 33 ALR4th 409.**

3. **Homicide § 22 (NCI4th); Constitutional Law § 342 (NCI4th) — first degree murder — life sentence — capital trial — presence at all stages**

Where defendant was tried on an indictment charging him with the capital felony of first degree murder and, upon his conviction for that crime, was subjected to a capital sentencing proceeding, the fact that the jury recommended and the trial court entered a sentence of life imprisonment did not change the capital nature of that trial or his status as a capital defendant in that trial, and the unwaivable require-

ment of the presence of a capital defendant at every stage of his trial was thus applicable.

**Am Jur 2d, Criminal Law §§ 901 et seq.**

Justice LAKE did not participate in the consideration or decision of this case.

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) from judgments entered by *Allsbrook, J.,* on 4 May 1989, in the Superior Court, HALIFAX County. Heard in the Supreme Court on 11 December 1991.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for the defendant-appellant Joe Cephus Johnston, Jr.*

*Harry H. Harkins, Jr., for the defendant-appellant Morris Wayne Johnson.*

MITCHELL, Justice.

The defendants were each tried upon proper indictments charging them with murder. The jury found both defendants guilty of murder in the first degree. At the conclusion of a capital sentencing proceeding, the jury recommended a sentence of death for the defendant Joe Cephus Johnston, Jr., and a sentence of life imprisonment for the defendant Morris Wayne Johnson. The trial court imposed the respective sentences pursuant to the jury's recommendation.

The defendants contend that the trial court committed reversible error by denying each defendant's motion to dismiss the charge of first-degree murder against him based on the insufficiency of the evidence. We find this contention without merit. The defendants also contend that the trial court erred by communicating with the jurors in the absence of the defendant, counsel, or a court reporter. We agree and hold that the defendants are entitled to a new trial. Because the issues presented in the defendants' other assignments of error are not likely to arise upon retrial, we do not reach or discuss them.

STATE v. JOHNSTON

[331 N.C. 680 (1992)]

The State's evidence tended to show that on 20 February 1988, Jackie Jamerson, Cindy Davis and the decedent, Ralph Bryant, decided to go to Ick's, a nightclub in Roanoke Rapids, North Carolina. All three were from the Capron, Virginia area and had known each other a long time. They had been to Ick's on many occasions.

At closing time, Jamerson, Davis and Bryant left Ick's and walked toward their car. A group of men, including the defendants, began making vulgar comments to the two women as they walked to their car. The women and Bryant ignored the comments and reached the car. Charlie Johnston, brother of the defendant Joe Cephus Johnston, brushed up against Bryant as Bryant was getting into the car. Charlie Johnston then proceeded to a hill behind a fence, where the defendants were located, and challenged Bryant to come across the fence and fight. At that point, Bryant took off his boots, walked to the other side of the fence and stood there saying nothing. When no one in the defendants' group approached him, Bryant went back to the car and began to drive away.

As Bryant and the women drove away, Cindy Davis saw a man from the defendants' group, Mike Smith, run toward them and throw a cinderblock which struck the car. Bryant then pulled the car into the parking lot of a bank, got out of the car and began chasing Smith. Bryant caught Smith from behind, grabbed his shirt and flipped him onto the pavement. Bryant told Smith he was not going to hurt him. Bryant said he merely wanted the group of men to leave Bryant and the two women alone.

After Bryant let Smith get up, the defendants and their group walked down the hill in Bryant's direction. Bryant left the two women and went to meet the defendants' group in the street. The defendant Joe Cephus Johnston said something to Bryant to which Bryant responded that he could take the men on one at a time, "but just leave the women alone." The defendant Morris Johnson swung his fist at Bryant. Bryant blocked that blow and hit Johnson. The defendant Joe Cephus Johnston then began hitting Bryant on the upper left side of his body. Both defendants then attacked Bryant at the same time. During the fight, Joe Cephus Johnston pulled a knife from his pocket and began stabbing Bryant. Morris Johnson also reached into his pocket, pulled something out, and began to strike Bryant in the back in a "slicing motion." During the course of the fight, Morris Johnson was stabbed in the stomach and the victim Bryant was fatally wounded.

Joe Cephus Johnston and several others left the scene to take Morris Johnson to the hospital. After leaving Johnson in the hospital, Johnston left North Carolina and went to a relative's house in Virginia. On the next day, Johnston telephoned a deputy sheriff in North Carolina and said that he was coming back to surrender to authorities. However, he was arrested in Virginia later and brought back to North Carolina for trial.

Phil Ricks, an emergency medical technician, testified that he arrived at Ick's about three or four minutes after receiving a call for medical assistance. The victim Bryant showed no sign of life when Ricks arrived. Ricks testified that he found a boxcutter about ten or fifteen feet from Bryant's body, which was identified at trial as belonging to Morris Johnson.

Dr. Robert Dorian, a pathologist, testified that he had done an autopsy on the body of the victim Ralph Bryant. In Dr. Dorian's opinion, Bryant's death resulted from multiple stab wounds. Dr. Dorian opined that Bryant had died within five to ten minutes after being stabbed, but he could not say for sure how long Bryant had remained conscious.

At the close of the State's evidence, and again at the close of all the evidence, the defendants moved to dismiss the charges of first-degree murder to the extent those charges were based on the theory of premeditation and deliberation. The motions were denied.

In one of their assignments of error, the defendants contend that the trial court erred in denying their motions to dismiss the first-degree murder charges against them because there was no substantial evidence to support a reasonable inference of premeditation and deliberation. On a defendant's motion for dismissal, the trial court must only determine whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). What constitutes substantial evidence is a question of law reserved for the court. *Id.* Substantial evidence is that which is existing and real, not just seeming or imaginary. *Id.; State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Olson*, 330 N.C. at 564, 411 S.E.2d at 595. In ruling on a motion to dismiss, the trial court must examine the evidence in the light

most favorable to the State, and the State is entitled to every reasonable inference that may be drawn therefrom. *Id.* Contradictions or discrepancies in the evidence are for the jury's consideration and do not warrant dismissal. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

"Murder in the first degree is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Hamlet*, 312 N.C. 162, 169, 321 S.E.2d 837, 842 (1984). "Premeditation" means that the act was thought out by the perpetrator beforehand for some period of time, however short, but no particular amount of time is necessary. *Id.* "Deliberation" means that the intent to kill was carried out in a cool state of blood in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. *Id.* at 170, 321 S.E.2d at 842-43. In this context, the term "cool state of blood" does not mean the perpetrator was devoid of passion or emotion. *Olson*, 330 N.C. at 564, 411 S.E.2d at 595-96. A perpetrator may premeditate, deliberate, and intend to kill although prompted and to a large extent controlled by passion at the time. *Id.*

Premeditation and deliberation are mental processes not normally susceptible to proof by direct evidence. In a majority of cases, circumstantial evidence must be relied upon to prove them. Some of the circumstances from which premeditation and deliberation may be implied are (1) the absence of provocation on the part of the deceased, (2) the statements and/or conduct of the defendant before and after the killing, (3) any threats or declarations of the defendant before or during the occurrence giving rise to the death of the deceased, (4) ill will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds. *Olson*, 330 N.C. at 565, 411 S.E.2d at 596; *State v. Gladden*, 315 N.C. 398, 430-31, 340 S.E.2d 673, 693 (1986).

[1] In the present case, substantial evidence was introduced which would support findings by the jury to the effect that after the defendants and their group shouted vulgarities at the victim and his two female friends, the victim Bryant attempted to leave. One

STATE v. JOHNSTON

[331 N.C. 680 (1992)]

of the members of the defendants' group, Mike Smith, then hit the victim's vehicle with a cinderblock. Bryant got out of the car and knocked Smith to the pavement, but then let him up and merely told him that he and his friends wanted to be left alone. Smith ran back to the others, and at this point the defendants' group started after Bryant. As they approached the car, the victim stood alone to meet them and to defend himself and his friends. The two defendants then made a concerted attack on the victim. During the fight, Joe Johnston pulled out a knife and stabbed the victim. Morris Johnson used a boxcutter during the course of the fight, which was found ten to fifteen feet from the victim's body when the paramedics arrived. After the victim was rendered helpless, Johnston continued to strike him. The two defendants then fled the scene; Johnson went to the hospital and Johnston went to Virginia.

The foregoing substantial evidence also would have supported jury findings of an absence of provocation on the part of the deceased, the dealing of lethal blows by the defendants after the deceased had been rendered helpless, and a killing accomplished in a brutal manner through the infliction of numerous mortal wounds. From such findings, it could reasonably be inferred that the defendants killed the victim with premeditation and deliberation. Therefore, the trial court did not err in denying the defendants' motions to dismiss the charges of first-degree murder based upon premeditation and deliberation.

[2] In another assignment of error, the defendants contend that the trial court erred *inter alia* by holding unrecorded private bench discussions with prospective jurors. These unrecorded discussions resulted in the trial court excusing a number of the prospective jurors. After review of the jury selection process, we conclude that the trial court committed error in this regard.

When the first group of prospective jurors was brought into the courtroom during the defendants' capital trial, the trial court asked if any of them knew of any reasons why they were not qualified to sit or had extraordinary problems that might excuse them from service. The trial court announced that it would hear any such prospective jurors individually at the bench. The trial court then heard excuses at the bench. This procedure was repeated eight times. Numerous prospective jurors were excused after these private unrecorded bench conferences. Because these conferences

**STATE v. JOHNSTON**

[331 N.C. 680 (1992)]

were not recorded, there is no indication in the record before us as to why most of these prospective jurors were excused.

The confrontation clause of Article I, Section 23 of the Constitution of North Carolina requires that a defendant be present at every stage of his capital trial. *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989), *vacated on other grounds*, --- U.S. ---, 111 L. Ed. 2d 777 (1990). The trial court's affirmative duty to insure the defendant's presence at every stage of a capital trial is not waiveable by the capital defendant. *Id.*

It is well settled that the process of selecting and impaneling the jury is a stage of any capital trial at which the defendant must be present. *State v. Smith*, 326 N.C. 792, 794, 392 S.E.2d 362, 363 (1990). Therefore, it was error for the trial court to exclude the defendants, their counsel, and the court reporter from its private conversations with prospective jurors prior to excusing those jurors. The State thus bears the burden of showing that the exclusion of these capital defendants from that stage of their trial was harmless beyond a reasonable doubt. *Huff*, 325 N.C. at 33, 381 S.E.2d at 653.

In the present case, the record before us does not reveal the substance of most of the trial court's private discussions with the prospective jurors who were excused. Thus, we are unable to engage in the proper analysis to determine whether the errors were harmless beyond a reasonable doubt. Therefore, we must conclude that the State has failed to carry its burden, and we cannot say that the trial court's errors were harmless beyond a reasonable doubt.

[3] The State points out that since Morris Johnson received a sentence of life imprisonment, he will not be tried capitally at any new trial. The State contends, therefore, that the defendant Johnson should not be considered a "capital defendant" whose presence was required at all stages of his trial. We find this contention without merit.

Capital cases are cases in which there is a possibility, but never a certainty, that the death penalty will be imposed. *State v. Lachat*, 317 N.C. 73, 86, 343 S.E.2d 872, 879 (1986); *State v. Barbour*, 295 N.C. 66, 70, 243 S.E.2d 380, 383 (1978). A conviction of the offense charged in such cases must result in either a sentence of death or a sentence of life in prison. *Id.*; N.C.G.S. § 15A-2000 (1983). It has always been the law in this state that a defendant must be present at every stage of his capital trial. *E.g.*, *Huff*,

325 N.C. at 31, 381 S.E.2d at 651 (review of the early cases on this rule); *State v. Moore*, 275 N.C. 198, 208, 166 S.E.2d 652, 659 (1969). In the present case, the defendant Morris Johnson was tried on an indictment charging him with the capital felony of first-degree murder and, upon his conviction for that crime, was subjected to a capital sentencing proceeding under G.S. § 15A-2000. The fact that the jury recommended and the trial court entered a sentence of life imprisonment did not change the capital nature of *that* trial or his status as a capital defendant in *that* trial. Therefore, the unwaiveable requirement of his presence applied at every stage of his trial and was violated by the trial court's private bench conferences with prospective jurors.

We are certain that the actions of the trial court were taken in good faith and resulted from its concern for the efficient selection and comfort of the jury. Nevertheless, we must vacate the verdicts and judgments entered against each of the defendants and remand their cases to the Superior Court, Halifax County, for a new trial.

New trial.

Justice LAKE did not participate in the consideration or decision of this case.