STATE OF NORTH CAROLINA v. BOBBY RAY MOSS

No. 86A90

(Filed 17 July 1992)

**1. Homicide § 253 (NCI4th) — murder — premeditation and deliberation — sufficiency of evidence**

There was sufficient evidence in a first degree murder prosecution that the victim died as a result of a premeditated and deliberate murder by defendant where defendant borrowed three dollars from his sister as she let him off near a house on 7 January 1989; defendant and the victim left the house later that day and were seen walking along the highway near the scene of the killing; the victim was then wearing the same clothes as when her body was found and defendant was then wearing a toboggan that was found at the crime scene; hair from defendant was found at the scene; the cause of death was strangulation, which would have required the perpetrator to continue to apply pressure to the victim's throat for two minutes after she lost consciousness; defendant was seen alone on the highway near the scene of the killing shortly after the victim had last been seen alive walking with defendant; defendant was now carrying a "wad" of cash and appeared to be nervous; and no evidence of provocation was presented.

**Am Jur 2d, Homicide § 454.**

STATE v. MOSS

[332 N.C. 65 (1992)]

**2. Homicide § 277 (NCI4th) — felony murder — robbery — evidence sufficient**

There was sufficient evidence from which the jury could find defendant guilty of felony murder based on common law robbery where defendant had borrowed three dollars earlier in the day of the crime; the victim had $375 in her pocketbook before she went walking with defendant; defendant had a "wad" of money later that same day; and no money was found in the victim's pocketbook or at the scene of the murder.

**Am Jur 2d, Homicide § 454.**

**3. Constitutional Law § 344 (NCI4th) — murder, kidnapping, robbery — voir dire — unrecorded bench conferences with prospective jurors — new trial**

A defendant in a prosecution for first degree murder, kidnapping, and robbery received a new trial where the court conducted private, unrecorded bench conferences with prospective jurors during jury selection and nothing in the record establishes the nature and content of the trial court's private discussions with the prospective jurors. Prior holdings compel the conclusion that defendant must receive a new trial on all charges, both capital and noncapital, presented to the jury during defendant's capital trial because the State failed to show that the violation of the right to be present during the capital trial was harmless beyond a reasonable doubt.

**Am Jur 2d, Criminal Law §§ 901-905.**

**Validity of jury selection as affected by accused's absence from conducting of procedures for selection and impaneling of final jury panel for specific cases. 33 ALR4th 429.**

Justice MEYER concurring.

APPEAL by the defendant pursuant to N.C.G.S. § 7A-27(a) from judgments sentencing him to death for first-degree murder and to a sentence of imprisonment for common law robbery, entered by *Griffin, J.*, on 31 January 1990 in Superior Court, DUPLIN County. Heard in the Supreme Court on 13 April 1992.

**STATE v. MOSS**

[332 N.C. 65 (1992)]

*Lacy H. Thornburg, Attorney General, by Tiare B. Smiley, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The State's evidence tended to show the following. On Saturday, 14 January 1989, hunters discovered the body of the victim Pauline Sanderson in a wooded area off Highway 1003 in Duplin County. The hunters immediately called the sheriff.

Sheriff's deputies arrived shortly thereafter and found the victim's body in a clearing. The body was lying against a tree with a navy blue sweater tied around the neck and to the tree. The deputies observed a red jacket; a toboggan hat, an open pocketbook and items apparently from the pocketbook strewn near the body. The victim's body was clothed in a white blouse and red slacks that were unbuttoned at the top. There was an injury to the left side of the victim's head.

Roger Byrd, a resident of the area where the victim's body was found, testified that he gave the victim a ride to the house of Archie Mathis around 9 a.m. on Saturday, 7 January 1989. When they arrived, the victim stated that she had misplaced her purse which had contained about $375. She searched for her purse and found it in Mathis's car. The victim indicated that all the money was accounted for. The purse was big and dark-colored and contained a billfold that was medium-sized and white. Byrd later identified the billfold found at the scene of the killing as the one belonging to the victim. Byrd stayed at the house for twenty to thirty minutes and saw the defendant enter the house as he was leaving.

Archie Mathis testified that Byrd brought the victim to his house on the morning of 7 January 1989. The defendant Bobby Ray Moss arrived shortly afterwards. When the defendant left to go to his brother's residence, the victim said she would walk with him as far as her brother-in-law's trailer. When the victim left with the defendant, she was carrying a pocketbook and was wearing red pants and a light-colored blouse. The defendant was wearing a dark-colored toboggan hat. This was the last time Archie Mathis saw Ms. Sanderson alive.

Kenneth Mathis, a nephew of Archie Mathis, testified that on 7 January 1989, the defendant left Archie Mathis's house with the victim. The defendant was carrying a brown bag that appeared to contain a change of clothes.

Vickie Godwin Baker, an employee at the Rose Hill IGA Store, testified that she saw the victim walking with a younger man along the highway on Saturday, 7 January 1989. Baker recognized the victim as a customer of the store. The man walking with the victim was much younger than the victim and was wearing a toboggan hat.

William R. Woodcock, a high school student, testified that he saw the defendant on Saturday, 7 January 1989, between 3 and 4 p.m. as Woodcock was driving out of his driveway. The defendant was walking with a woman. When Woodcock returned home thirty to thirty-five minutes later, he saw the defendant walking alone. The defendant came into his yard and asked for a ride. Woodcock and his brother took the defendant to Warsaw. The defendant was wearing jeans with white socks pulled up over the outside of the jeans and was not wearing a hat. The defendant was carrying a lot of cash and paid Woodcock five dollars for the ride. The defendant appeared nervous.

The victim's sister, Marleen Pope, testified that the victim received a disability check of $368 on the first of each month. The navy sweater found at the scene of the killing belonged to the victim and had been a gift from the victim's daughter. Pope did not recognize the toboggan hat that was found at the scene.

Detective W.E. Ramsey testified regarding the details of the crime scene. The body of the victim was found clothed in a white blouse and red pants. The body was face up with a navy sweater looped around the neck and tied to a tree. The body was without shoes or socks. A maroon-colored toboggan hat and a maroon purse were found next to the victim's body. The contents of the purse were spilled on the ground. No money was found in the purse or at the scene of the killing. The victim's body bore bruises on the neck and a wound just above the left eye exposing the edge of the skull.

W. Scott Worsham testified for the State as an expert in forensic hair examination and identification. Worsham examined eighty head hairs taken from the toboggan hat found near the

body; these hairs were consistent with hair of the defendant. None were consistent with those of the victim. One head hair from the navy sweater and one on a handkerchief found at the scene originated from the defendant. A pubic hair found on the red jacket was consistent with the defendant's pubic hair. A forensic serologist testified that he found sperm inside the victim's vagina.

The medical examiner noted that there were minor injuries on the victim's abdomen and wrists. Near the victim's left eye was a laceration measuring one-quarter inch in length that exposed the victim's skull. This injury was probably caused by blunt force. The medical examiner determined that the cause of the victim's death was strangulation but could not determine the time of death. The medical examiner stated that the changes in the body's condition were consistent with the death occurring on 7 January 1989.

The defendant did not testify at trial, but did introduce evidence. Robert Wiggins, the defendant's employer, testified that the defendant was not at work on Saturday, 7 January 1989. The defendant was paid $200 per week and had been paid on the 6th or 7th of January 1989.

The defendant's sister, Betty Ann Beddingfield, testified that the defendant was drunk on Saturday, 7 January 1989, when she dropped him off near Archie Mathis's house about 1 p.m. At that time the defendant asked his sister for three dollars to play cards. The defendant came back to Beddingfield's house at 5:30 p.m. by taxi and paid for the taxi with cash. The defendant had a "wad" of money on him and was not wearing the toboggan hat she had seen him wearing earlier. Beddingfield identified the toboggan hat found at the scene as belonging to the defendant. Timothy Beddingfield, Betty Ann Beddingfield's husband, corroborated his wife's testimony.

Other evidence introduced at trial is discussed at other points in this opinion where pertinent to the issues raised by the defendant.

At the close of the State's evidence, and again at the close of all evidence, the defendant moved to dismiss all of the charges against him for insufficiency of the evidence. The trial court denied the motions.

[1] The defendant assigns as error, *inter alia*, the trial court's denial of his motions to dismiss the first-degree murder charge and the common law robbery charge for insufficiency of the evidence.

STATE v. MOSS

[332 N.C. 65 (1992)]

The defendant argues that the State presented insufficient evidence to support a reasonable finding that the defendant killed the victim with premeditation and deliberation, killed the victim during a common law robbery, or committed any robbery or killing at all.

In *State v. Small*, 328 N.C. 175, 400 S.E.2d 413 (1991), we described the appropriate standard for appellate review of such questions as follows:

"On a motion to dismiss on the ground of insufficiency of the evidence, the question for the court is whether there is substantial evidence of each element of the crime charged and of the defendant's perpetration of such crime." *State v. Bates*, 309 N.C. 528, 533, 308 S.E.2d 258, 262 (1983).

[T]he trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from it. . . . If there is substantial evidence — whether direct, circumstantial, or both — to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.

*State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988) (citations omitted). Further, "[t]he defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Jones*, 280 N.C. 60, 66, 184 S.E.2d 862, 866 (1971). The determination of the witnesses' credibility is for the jury. *See Locklear*, 322 N.C. at 358, 368 S.E.2d at 383. "[C]ontradictions and discrepancies do not warrant dismissal of the case — they are for the jury to resolve." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982).

*State v. Small*, 328 N.C. at 180-81, 400 S.E.2d at 415-16, *quoted in State v. Quick*, 329 N.C. 1, 19, 405 S.E.2d 179, 190-91 (1991). " 'The trial court's function is to determine whether the evidence will permit *a reasonable inference* that the defendant is guilty of the crimes charged.' " *Quick*, 329 N.C. at 19, 405 S.E.2d at 191 (quoting *State v. Vause*, 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991) ).

Under this standard, we conclude that the State presented substantial evidence to support the defendant's conviction of first-degree murder, both on the theory of premeditation and deliberation and the theory of felony-murder. N.C.G.S. 14-17 (Supp. 1991).

The evidence, taken in the light most favorable to the State, tended to show that the defendant went to Archie Mathis's house on 7 January 1989 about 1 p.m. When the defendant's sister let him off near the house, the defendant borrowed three dollars from her. Later that day, the defendant and the victim left Mathis's house and were seen walking together along the highway near the scene of the killing. At that time, the victim was wearing the same clothes as when her body was found. When seen walking with the victim, the defendant was wearing a toboggan hat that was later found at the crime scene. Several of the defendant's head hairs were on the hat. Also, the defendant's head hairs were found on the navy sweater found around the victim's neck and on a handkerchief found near the victim's body. Hair consistent with the defendant's pubic hair was on the victim's red jacket found at the scene. An expert examined all eighty-three individual hairs found at the scene, which included five different types of body and head hair. In the expert's opinion, any possibility that all these hairs came from someone other than the defendant was extremely remote. The medical examiner determined that the cause of the victim's death was strangulation. The defendant was seen alone on the highway near the scene of the killing shortly after the victim had last been seen alive walking with the defendant. Although earlier that day the defendant had needed to borrow three dollars from his sister, he was carrying a "wad" of cash and appeared to be nervous after walking with the victim the last time she was seen alive. There clearly was substantial evidence that the defendant killed the victim.

When determining whether there is sufficient evidence to support a reasonable finding that a killing was done with premeditation and deliberation, the court may consider evidence tending to show, *inter alia*, the following: (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) the dealing of lethal blows after the deceased has been felled and rendered helpless; (4) evidence that the killing was done in a brutal manner; and (5) the nature and number of the victim's wounds. *State v. Vause*, 328 N.C. 231, 238, 400 S.E.2d 57, 62 (1991); *State v. Bullock*, 326 N.C. 253, 258, 388 S.E.2d 81, 84 (1990). The State presented evidence here that the victim was murdered in a brutal manner. The victim suffered a laceration near her left eye that exposed a portion of her skull. The medical examiner discovered a hairline fracture of the victim's

skull that was probably caused by a blunt force injury. In addition, the medical examiner determined that the victim was strangled to death. The victim's thyroid cartilage or voice box was fractured, which resulted in a large amount of internal bleeding. The medical examiner testified that a person being strangled would become unconscious in fifteen to twenty seconds. The perpetrator would have had to continue to apply pressure on the victim's throat for two minutes after she lost consciousness in order to kill her. No evidence of provocation was presented. *State v. Robbins*, 319 N.C. 465, 356 S.E.2d 279, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987). Such evidence was substantial evidence that the victim died as a result of a premeditated and deliberate murder.

[2] There was also substantial evidence from which the jury quite reasonably could find that the defendant was guilty of felony-murder, with common law robbery as the underlying felony. Common law robbery is:

> "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Smith*, 305 N.C. 691, 700, 292 S.E.2d 264, 270, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982). The felonious taking element of common law robbery requires "a taking with the felonious intent on the part of the taker to deprive the owner of his property permanently and to convert it to the use of the taker." *State v. Lawrence*, 262 N.C. 162, 168, 136 S.E.2d 595, 599-600 (1964)

*State v. Herring*, 322 N.C. 733, 739-40, 370 S.E.2d 363, 368 (1988).

Evidence tended to show that when the defendant's sister dropped him off near Archie Mathis's house, the defendant borrowed three dollars from her. Before the defendant went walking with the victim, the victim had about $375 in her pocketbook. Later that same day, the defendant had a "wad" of money. No money was found in the victim's pocketbook or at the scene of the murder. There was substantial evidence supporting each element of common law robbery and substantial evidence to support a reasonable finding that the defendant murdered the victim in order to rob her of her money. Therefore, the trial court did not err by refusing to dismiss either the first-degree murder charge or the charge of common law robbery.

**STATE v. MOSS**

[332 N.C. 65 (1992)]

[3]   In another assignment of error, the defendant contends that the trial court committed reversible error under Article I, Section 23 of the Constitution of North Carolina when it conducted unrecorded private bench discussions with prospective jurors during jury selection for the defendant's capital trial. We have often held that similar errors required a new trial. *E.g., State v. Johnston and Johnson*, 331 N.C. 680, 417 S.E.2d 228 (1992); *State v. Cole*, 331 N.C. 272, 415 S.E.2d 716 (1992); *State v. McCarver*, 329 N.C. 259, 404 S.E.2d 821 (1991); *State v. Smith*, 326 N.C. 792, 392 S.E.2d 362 (1990). With commendable candor, the State concedes that it is unable to distinguish the errors in such cases from the error in the present case in any meaningful way.

When the first group of prospective jurors was brought into the courtroom at the commencement of jury selection for the defendant's trial, the trial court asked whether any prospective juror would have difficulty in serving as a juror. Several prospective jurors approached the bench and conferred privately with the trial court. Neither the court reporter, the defendant, nor defense counsel were privy to these conversations. On the second day of jury selection, the trial court asked a similar question of prospective jurors. Several more prospective jurors approached the bench and conferred privately with the trial court. None of these conferences with prospective jurors was recorded and all of them were conducted out of the hearing of the court reporter, the defendant, and defense counsel. The trial court made no entry in the record tending to establish in any manner what took place during most such private unrecorded bench conferences with prospective jurors.

The issue before us is whether the trial court's action in conducting unrecorded bench conferences with prospective jurors out of the hearing of the defendant and his counsel violated the defendant's right to be present at every stage of the trial. As we have often. stated:

The confrontation clause of the Constitution of North Carolina guarantees the right of this defendant to be present at *every* stage of the trial. *State v. Huff*, 325 N.C. 1, 29, 381 S.E.2d 635, 651 (1989); N.C. Const. Art. I, § 23 (1984). This state constitutional protection afforded to the defendant imposes on the trial court the affirmative duty to insure the defendant's presence at every stage of a capital trial. The defendant's right to be present at every stage of the trial "ought to be

STATE v. MOSS

[332 N.C. 65 (1992)]

kept forever sacred and inviolate." *State v. Blackwelder*, 61 N.C. 38, 40 (1866). In fact, the defendant's right to be present at every stage of his capital trial is not waiveable. *State v. Artis*, 325 N.C. 278, 297, 384 S.E.2d 470, 480 (1989): *State v. Huff*, 325 N.C. at 31, 381 S.E.2d at 652. *But cf. State v. Tate*, 294 N.C. 189, 239 S.E.2d 821 (1978) (private communication between a judge and a seated juror expressly disapproved, however, the defendant's failure to object to the impropriety held to constitute a waiver).

*Smith*, 326 N.C. at 794, 392 S.E.2d at 363.

Jury selection is a stage of a capital trial at which the defendant must be present. *Id.* The trial court erred by conducting bench conferences with prospective jurors out of the hearing of the defendant and his counsel. *Id.* Therefore, "[u]nless the State proves that the denial of the defendant's right, under article I, section 23 of the Constitution of North Carolina, to be present at this stage of his capital trial was harmless beyond a reasonable doubt, we must order a new trial." *Id.* (citing *State v. Huff*, 325 N.C. 1, 33, 381 S.E.2d 635, 653 (1989), *death sentence vacated on other grounds*, --- U.S. ---, 111 L. Ed. 2d 777 (1990) ).

We cannot determine from the record of this capital trial whether the error in question was harmless beyond a reasonable doubt. Nothing in the record before us establishes the nature and content of the trial court's private discussions with the prospective jurors. Therefore, we are required to conclude that the State has failed to carry its burden of proving that the trial court's errors were harmless beyond a reasonable doubt. *Smith*, 326 N.C. at 794, 392 S.E.2d at 364. As a result, the defendant must receive a new trial.

The State argues, however, that even if the defendant must receive a new trial for murder, a new trial is not required for the noncapital charge of common law robbery. The State points out that in noncapital trials, the defendant's right of presence is personal and the defendant may waive his right. *State v. Richardson*, 330 N.C. 174, 410 S.E.2d 61 (1991); *State v. Tate*, 294 N.C. 189, 239 S.E.2d 821 (1978). The State correctly summarizes this legal principle in cases where the defendant is tried only for noncapital offenses. However, we have held when a defendant was tried in a *capital trial* at which both capital and noncapital offenses were joined for trial, that the defendant may not waive the constitutional requirement of his presence. In such cases, absent a showing of

harmlessness beyond a reasonable doubt, the defendant is entitled to a new trial for all offenses charged, both capital and noncapital. *E.g., State v. Cole*, 331 N.C. 272, 415 S.E.2d 716 (1992); *State v. McCarver*, 329 N.C. 259, 404 S.E.2d 821 (1991); *State v. Smith*, 326 N.C. 792, 392 S.E.2d 362 (1990).

In *Smith*, the defendant was charged with and convicted of first-degree murder, felonious breaking and entering, and being a habitual felon. 326 N.C. at 793, 392 S.E.2d at 363. We held there that the defendant was entitled to a new trial because the State could not show that the trial court's unrecorded private conversations with the prospective jurors were harmless beyond a reasonable doubt. *Id.* at 794, 392 S.E.2d at 364. As a result, we concluded that "we must vacate the *verdicts* and *judgments* entered against the defendant after the capital *trial* in which these errors were committed." *Id.* at 795, 392 S.E.2d at 364 (emphasis added).

In *State v. McCarver*, 329 N.C. 259, 404 S.E.2d 821 (1991), the defendant was *tried* capitally and convicted of first-degree murder and robbery with a dangerous weapon. *Id.* at 260, 404 S.E.2d at 821. We granted the defendant a new trial because the State could not show that the private unrecorded conversations between the trial court and the prospective jurors which violated the defendant's right of presence were harmless beyond a reasonable doubt. *Id.* at 261, 404 S.E.2d at 822. We ordered a new trial on all charges which had been before the jury during the defendant's *capital trial* — first-degree murder and armed robbery. *Id.*

In the recent case of *State v. Cole*, 331 N.C. 272, 415 S.E.2d 716 (1992), the State raised the same argument it asserts in the present case. In *Cole*, the defendant was charged with the murder of his girlfriend and his girlfriend's mother. *Id.* at 274, 415 S.E.2d at 716. The charges were joined and presented to the jury in a capital trial at which the defendant was tried for his life for the first-degree murder of his girlfriend and also tried for the noncapital offense of the second-degree murder of his girlfriend's mother. *Id.* We held that the trial court erred when it excused prospective jurors after holding unrecorded bench conferences with them and concluded that the State had not shown that the error was harmless beyond a reasonable doubt. *Id.* at 275, 415 S.E.2d at 718. The State argued that the defendant was not tried capitally for the murder of his girlfriend's mother and, therefore, the defendant could waive his right of presence with regard to the noncapital

offense of second-degree murder. *Id.* at 276-77, 415 S.E.2d at 718. The State argued that the defendant, by not objecting at trial, waived his right of presence with regard to the charge of second-degree murder and, as a result, the conviction for that charge was without error. *Id.* at 277, 415 S.E.2d at 718. Relying on *Smith* and *McCarver*, we rejected the State's argument and held that the defendant must receive a new trial on all charges which had been presented during his capital trial. *Id.*

In *State v. Mitchell*, 321 N.C. 650, 365 S.E.2d 554 (1988), we granted a new trial on all charges—both capital and noncapital— because of prejudicial error committed by the trial court. *Id.* at 651, 365 S.E.2d at 555. In that case, the defendant was charged with first-degree murder, armed robbery, aiding and abetting in armed robbery, and felonious conspiracy. *Id.* at 651, 365 S.E.2d at 554. The charges were joined and brought on for trial in a capital trial at which the defendant was placed in jeopardy of receiving the death penalty for first-degree murder. We held that the trial court's denial of the defendant's statutory right to have all of his counsel address the jury at the conclusion of each stage *of a capital trial* required a new trial. *Id.* at 659, 365 S.E.2d at 559. Although the error related only to rights attaching to a criminal defendant during a capital trial, we held that the same

> principles of law require us to hold in cases where a capital felony has been joined for trial with noncapital charges "that the failure of the trial judge to allow both of defendant's counsel to make the closing argument was prejudicial error in the noncapital as well as the capital charges." *State v. Eury*, 317 N.C. at 518, 346 S.E.2d at 451. Therefore, the defendant is also entitled to a new trial as to the noncapital charges in the present case.

*Id.*

A proper regard for the doctrine of *stare decisis* and the adherence to case precedents required by that doctrine compels us to follow the rules established in our prior cases and, therefore, to grant the defendant in the present case a new trial for both the capital offense of first-degree murder and the noncapital offense of common law robbery.

The State has presented no reason sufficient to convince us that our reasoning in our prior cases was wrong. Our prior holdings

compel us to conclude that this defendant must receive a new trial on all charges—both capital and noncapital—presented to the jury during the defendant's capital trial because the State has failed to show that the violation of the defendant's right of presence during his capital trial was harmless beyond a reasonable doubt.

We are confident that the actions of the trial court were in good faith and resulted from its concern for the efficient selection of the jury. Nevertheless, the defendant must receive a new trial on these charges.

New trial.

Justice MEYER concurring.

I agree in all respects with the opinion of the majority. I write separately only to point out a matter not addressed by the majority.

With regard to defendant's contention that the trial court erred in conducting private, unrecorded bench conferences with prospective jurors, the majority relies in part on our recent opinion in *State v. Cole*, 331 N.C. 272, 415 S.E.2d 716 (1992). As in this case, the trial court in *Cole* conducted unrecorded bench conferences with prospective jurors on two days. In *Cole*, the first instance of unrecorded bench conferences with prospective jurors occurred immediately following the court's announcement that its first order of business would be to select a grand jury and grand jury foreman. *Id.* at 274, 415 S.E.2d at 717. Because "defendant's trial had not commenced at that time," we concluded that "defendant did not have the right to be present at the conferences." *Id.* at 275, 415 S.E.2d at 717. However, we further concluded that the defendant was entitled to a new trial because the trial court had excused other prospective jurors questioned during private, unrecorded bench conferences that were held after the defendant's case had been called for trial and jury selection had commenced. *Id.* Thus, in *Cole*, we made it clear that a defendant has no right to be present during private, unrecorded bench conferences with prospective jurors prior to the commencement of the defendant's trial.

My review of the record on appeal in this case reveals that defendant's case was never formally called for trial by the prosecutor; thus, it is unclear whether the trial court's conferences with prospective jurors on the first day were conducted before or after

defendant's trial had commenced. However, here, as in *Cole*, a second venire was summoned to appear at trial after jury selection had commenced in defendant's case. As with the first venire, the trial court asked of these prospective jurors whether any of them would have difficulty serving as a juror. Several of these prospective jurors approached the bench and conferred privately with the trial court, out of the hearing of the court reporter, defendant, and defense counsel. At least one prospective juror was then excused by the trial court without explanation. While it is unclear from the record on appeal whether some of the trial court's earlier, private, unrecorded conferences with prospective jurors occurred before defendant's case was called for trial or had otherwise commenced, it is quite clear that the trial court deprived defendant of his state constitutional right to presence by engaging in private, unrecorded communications with prospective jurors on the second day of jury selection, well after defendant's trial had commenced. Because the State has failed to show that the trial court's error with regard to these latter ex parte communications was harmless beyond a reasonable doubt, defendant is entitled to a new trial.