IN THE MATTER OF: JOHNNY STRADFORD

No. COA94-870

(Filed 1 August 1995)

### Constitutional Law § 342 (NCI4th)— sexual abuse of children—remote testimony of victims admissible

At an adjudicatory hearing on two juvenile petitions alleging first-degree rape and first-degree sex offense, defendant's federal and state rights of confrontation were not violated when the trial court authorized the remote testimony by closed circuit television of the child witnesses who, according to their clinical therapist, would be further traumatized by a face-to-face confrontation with defendant, since the witnesses testified under oath, were subject to full cross-examination, and were able to be observed by the judge and defendant as they testified.

**Am Jur 2d, Criminal Law §§ 692 et seq., 901 et seq.**

**Condition interfering with accused's view of witness as violation of right of confrontation. 19 ALR4th 1286.**

**Federal constitutional right to confront witnesses— Supreme Court cases. 98 L. Ed. 2d 1115.**

Judge GREENE concurring.

Appeal by defendant from order entered 29 April 1994 by Judge William G. Jones in Mecklenburg County District Court. Heard in the Court of Appeals 9 May 1995.

*Attorney General Michael F. Easley, by Investigative Law Clerk Paula A. Bridges and Associate Attorney General Carol K. Barnhill, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

JOHNSON, Judge.

On 17 September 1993, two juvenile petitions were filed pursuant to North Carolina General Statutes § 7A-517(12) (Cum. Supp. 1994) alleging that defendant Johnny Stradford committed one count of

**IN RE STRADFORD**

[119 N.C. App. 654 (1995)]

first degree rape and one count of first degree sex offense against A., a six-year-old minor child, and one count of first degree rape and one count of first degree sex offense against B., a seven-year-old minor child.

The evidence at the adjudicatory hearing showed the following: A. testified that defendant, who was her babysitter, took her into a bathroom, made her lie down on the floor, and put "his thing that he pees with" in her. B. testified that defendant took her to a bathroom, pulled down her skirt, and put his "private" in hers. B. also observed defendant doing something to A. under the bed covers.

On approximately 3 August 1993, the girls told their stepmother, Sonya Stansbury, what defendant had done to them. B. was hesitant to talk about what had happened, and cried and became withdrawn as she told her stepmother about the incident. The day after the girls told their stepmother about the abuse, Ms. Stansbury contacted Dr. Lucy Downey, a pediatrician at Haywood Pediatrics.

After being qualified as an expert witness, Dr. Downey testified that she performed vaginal and rectal examinations on both girls. Dr. Downey found B.'s vaginal examination to be abnormal. B.'s anal opening was also irregular. Based on her examination, Dr. Downey was of the opinion that B.'s vagina and anus had been penetrated. Although sexual abuse was not confirmed, the findings were consistent with sexual contact, including penetration. The findings were also consistent with the history received from Ms. Stansbury. A.'s vaginal exam was also abnormal and indicated the possibility of sexual contact. Dr. Downey was unable to perform a thorough rectal examination of A. Dr. Downey was unable to form an opinion whether penetration of A.'s vagina and anus had occurred.

A Mecklenburg County Child Protective Services worker, Joy Burris, testified that on 9 June 1993, she responded to a call to investigate unsupervised children at the Cricket Inn on Nations Ford Road. Upon arriving at the Cricket Inn, Ms. Burris discovered five children, including A. and B., in a room attended by fifteen year old Itreon Stradford. That afternoon, Ms. Burris spoke to A. and B. who told her that their babysitters were Itreon and defendant, who had been caring for them for a couple of days. The girls also told Ms. Burris that Itreon and defendant were living in the hotel room.

Officer Donna Browning, a member of the Youth Bureau Investigations unit of the Charlotte Police Department, testified that

she became involved in the case when the Department of Social Services made a referral. Officer Browning assisted Ms. Burris in a criminal investigation of the child neglect of A., B., and another child. As part of the investigation, Officer Browning interviewed defendant; Officer Browning testified that she asked defendant if he was playing around with A. and B., "and he replied the boys were playing with [A. and B.] by pulling down their panties before." He also indicated that he had babysat the children for "about a month." Defendant denied touching either girl's private parts, and denied putting his penis into either girl's private parts. Defendant also denied that anyone else had touched the girls.

Defendant was adjudicated delinquent on two counts of first degree rape. Two counts of first degree sexual assault were dismissed. Defendant has appealed to our Court.

Defendant first argues on appeal that the trial court had no authority to authorize a procedure where the complainant testified out of the presence of defendant. Prior to the hearing, the State had moved that the trial court permit A. and B. to testify via a closed circuit television due to the girls' probable inability to communicate if forced to testify in defendant's presence. Following an evidentiary hearing on the motion, the trial court granted the State's motion. Defendant argues that there is no express or implied authority for the trial court to employ the procedure used in the instant case, namely, remote testimony. Citing North Carolina General Statutes § 7A-629 (1989) (juvenile adjudications to be conducted in open court) and North Carolina General Statues § 15-166 (1983) (defendant may not be excluded from closed courtroom), defendant argues that "[t]he proper place for a debate on the advantages, disadvantages, and [guidelines] for remote testimony is in the legislative chamber. As a matter of state constitutional law, and public policy, the trial court exceeded its authority in making the determination here that such a procedure be followed in this case." Defendant also makes an argument that the remote testimony procedure denied defendant his state and federal rights to confront the witness against him.

The State argues that pursuant to North Carolina General Statutes § 8C-1, Rule 611(a) (1992), the court is authorized to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . make the interrogation and presentation effective for the ascertainment of the truth. . . ." Noting that our courts have systematically recognized that special

exceptions to general courtroom procedures are often required to more effectively question child witnesses in sexual abuse cases, *e.g.*, *State v. Stanley*, 310 N.C. 353, 312 S.E.2d 482 (1984) and *State v. Brice*, 320 N.C. 119, 357 S.E.2d 353 (1987), the State argues that the trial court had absolute authority to authorize the remote testimony of the child witnesses. The State notes that other states have statutory law allowing this procedure. The State also argues that examination of the child witnesses out of defendant's physical presence did not abridge defendant's federal or state constitutional right to confront the witnesses against him. The State submits that *Maryland v. Craig*, 497 U.S. 836, 111 L.Ed.2d 666 (1990) addressed this precise issue.

In *Maryland v. Craig*, the Supreme Court addressed the constitutionality of a Maryland statute which allowed a child victim in a sexual abuse case to testify outside of the defendant's presence by a one-way closed circuit television. The Court reasoned that this was proper:

> [W]here necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation. Because there is no dispute that the child witnesses in this case testified under oath, were subject to full cross-examination, and were able to be observed by the judge, jury, and defendant as they testified, we conclude that, to the extent that a proper finding of necessity has been made, the admission of such testimony would be consonant with the Confrontation Clause.

*Craig*, 497 U.S. at 857, 111 L.Ed.2d at 686. The *Craig* Court went on to state that before this type of testimony will be allowed, the following must be met:

> The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. . . . Finally, the trial court must find that

IN RE STRADFORD

[119 N.C. App. 654 (1995)]

the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than "mere nervousness or excitement or some reluctance to testify[.]" (Citations omitted.)

*Id.* at 855-56, 111 L.Ed.2d at 685. Defendant, while recognizing *Craig v. Maryland,* asserts that "[o]ur state constitutional right to confront one's accusers is broader than the corresponding right under the Sixth Amendment to the U.S. Constitution." Defendant cites *State v. Moss,* 332 N.C. 65, 73-74, 418 S.E.2d 213, 218 (1992) (*quoting State v. Blackwelder,* 61 N.C. 38, 40 (1866) (our confrontation right is a right which "ought to be kept forever sacred and inviolate") and *State v. Moore,* 275 N.C. 198, 208, 166 S.E.2d 652, 659 (1969) (our confrontation clause requires "that the witness must be present before the triers of fact and the accused so that they are 'put face to face' ") in making this argument.

Although this particular issue of remote testimony has not been previously addressed in our state, we find *State v. Jones,* 89 N.C. App. 584, 367 S.E.2d 139 (1988) instructive. In *Jones,* an expert witness testified that the child victim in a sexual abuse case exhibited an intense fear of the defendant and could suffer emotional harm if forced to testify in his presence. The trial judge ordered the defendant excluded from the courtroom during the questioning of the child. The defendant was able to view the child and hear her responses by one-way closed circuit television, and the defense attorney, who was in the courtroom with the child, was allowed to cross-examine the child and confer with the defendant, who was in the judge's chambers. Our Court held on appeal that the defendant's exclusion from the courtroom did not violate his constitutional right to confront the witnesses against him. The Court reasoned that "the trial court's use of a closed circuit television and its act of providing defendant and his attorney adequate opportunity to communicate during the victim's testimony, were sufficient to permit defendant to hear the evidence and refute it." *Id.* at 588, 367 S.E.2d at 142.

We believe, on the facts of the instant case, the trial court properly authorized the remote testimony of the child witnesses. We believe that "despite the absence of face-to-face confrontation . . . [the remote testimony preserved] the essence of effective communication." We note, in the instant case, that the child witnesses testified under oath, were subject to full cross-examination, and were able to be observed by the judge and defend-

**IN RE STRADFORD**

[119 N.C. App. 654 (1995)]

ant as they testified. As such, and *on these facts*, we believe the trial court properly exercised its discretion in authorizing this method of testifying, and did not deny defendant his state and federal rights to confront the witnesses against him.

Alternatively, defendant argues that the trial court's findings were insufficient under both the federal and state constitutions in that the court's finding that the children would be traumatized by defendant was without proper evidentiary support. We have reviewed the testimony presented at the adjudicatory hearing from Rita Newkirk, the girls' clinical therapist. Based on Ms. Newkirk's training and experience, and her therapy sessions with A. and B, Ms. Newkirk testified that it would be "further traumatizing" if A. and B. were subject to face-to-face confrontations with defendant. We find, after reviewing Ms. Newkirk's entire testimony, that her testimony provided adequate support for the trial court's decision to authorize the use of remote testimony.   .

Finally, defendant argues that the trial court erred in not disclosing to defendant material collected on the child witnesses by the Department of Social Services. The trial court conducted an *in camera* review of these records and found that there was nothing therein which defendant was entitled to use to defend himself. Defendant requests that our Court review these sealed documents. *See State v. Phillips*, 328 N.C. 1, 399 S.E.2d 293, *cert. denied*, 501 U.S. 1208, 115 L.Ed.2d 977 (1991). We have reviewed those sealed documents and have found no documents of material benefit to defendant. This argument is overruled.

No error.

Judge MARTIN, JOHN C. concurs.

Judge GREENE concurs with separate opinion.

Judge GREENE concurring

Although I join the majority opinion, I write separately because I believe there are two issues that deserve some elaboration. Those issues are: (I) whether, in the absence of a statute, a trial court has the authority to permit a child witness to testify via closed circuit television; and if so, (II) whether the use of such procedure violates the defendant's state constitutional right to confront his accusers.

**IN RE STRADFORD**

[119 N.C. App. 654 (1995)]

I

In North Carolina, contrary to the situation that existed in Maryland at the time of *Maryland v. Craig*, 497 U.S. 836, 111 L. Ed. 2d 666 (1990), there does not exist a specific statute that authorizes the trial judge to permit the use of closed circuit television to present the testimony of a child witness. North Carolina is in the minority in this respect as at least thirty-four states have, like Maryland, adopted statutes permitting the use of closed circuit television in this instance. National Center for Prosecution of Child Abuse, *Legislation Regarding the Use of Closed Circuit Television Testimony in Criminal Child Abuse Proceedings* (1994). The defendant therefore argues that the trial court exceeded its authority in permitting the state to present the testimony of the child witness via closed circuit television. I disagree.

Although there is no specific statute on point, the legislature has provided that the trial court is to "exercise reasonable control over the mode . . . of interrogating witnesses and presenting evidence so as to . . . protect witnesses from harassment or undue embarrassment." N.C.G.S. § 8C-1, Rule 611(a) (1992). This statutory language is sufficiently broad to vest the trial court with the discretion to permit a party to utilize closed circuit television for the presentation of the testimony of a child witness. In any event, it would appear that the use of this procedure is within the inherent power of the trial court and indeed, courts in other states have so held. *See In re Mental Health Center*, 42 N.C. App. 292, 296, 256 S.E. 2d 818, 821 (court has inherent power to take action necessary to "fulfill their assigned mission of administering justice efficiently and promptly"), *disc. rev. denied*, 298 N.C. 297, 259 S.E.2d 298 (1979); *see also In Re Will of Hester*, 320 N.C. 738, 741, 360 S.E.2d 801, 804 (defining inherent power to include "board discretionary power sufficient to meet the circumstances of each case"), *reh'g denied*, 321 N.C. 300, 362 S.E.2d 780 (1987); *Hicks-Bey v. United States*, 649 A.2d 569, 574-75 (D.C. App. 1994) (trial court had inherent authority to permit a child sex abuse victim to testify via closed circuit television).

II

The North Carolina Constitution provides that a person charged in a criminal prosecution has the right "to confront the accusers and witnesses with other testimony." N.C. Const. art. I, § 23. The defendant argues that this language grants him greater rights than the Court

**IN RE STRADFORD**

[119 N.C. App. 654 (1995)]

in *Maryland v. Craig* granted under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution. I disagree.

The Sixth Amendment provides that the accused in a criminal prosecution has the "right to be confronted with the witnesses against him." The language in both instruments is similar. Nonetheless, "we have the authority to construe our own constitution differently from the construction by the United States Supreme Court of the Federal Constitution, as long as our citizens are thereby accorded no lesser rights than they are guaranteed by the parallel federal provision." *State v. Carter*, 322 N.C. 709, 713, 370 S.E.2d 553, 555 (1988). Therefore, it does not necessarily follow that Article I, § 23 must be construed to mean that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial." *Craig*, 497 U.S. at 850, 111 L. Ed. 2d at 682. That construction, however, is proper and indeed consistent with previous opinions from this Court and our Supreme Court permitting the use of hearsay testimony in criminal trials where the defendant was denied the right to a face-to-face confrontation with the person making the out-of-court statement. *E.g.*, *State v. Deanes*, 323 N.C. 508, 525, 374 S.E.2d 249, 260 (1988), *cert. denied*, 490 U.S. 1101, 104 L. Ed. 2d 1009 (1989); *State v. Rogers*, 109 N.C. App. 491, 499, 428 S.E.2d 220, 225, *disc. rev. denied*, 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied*, —— U.S. ——, 128 L. Ed. 2d 54, *reh'g denied*, —— U.S. ——, 128 L. Ed. 2d 495 (1994). To construe Article I, § 23 otherwise would "prohibit the admission of any accusatory hearsay statement made by an absent declarant—a declarant who is undoubtedly as much a 'witness against' a defendant as one who actually testifies at trial." *Craig*, 497 U.S. at 849, 111 L. Ed. 2d at 680-81. Accordingly, the construction placed on the Sixth Amendment Confrontation Clause in the *Craig* decision is equally applicable to the Confrontation Clause of Article I, § 23 of the North Carolina Constitution. *See State v. Moore*, 275 N.C. 198, 208, 166 S.E.2d 652, 659 (1969) (provisions are similar and grant "accused [the] same protection").