STATE OF NORTH CAROLINA v. CARLOS DWAYNE STINNETT, JR.

No. COA97-528

(Filed 7 April 1998)

### 1. Homicide § 552 (NCI4th); Assault and Battery § 116 (NCI4th)— first-degree murder—aggravated assault— instructions on lesser offenses not required

In a prosecution of defendant for first-degree murder of his father and assault with a deadly weapon with intent to kill inflicting serious injury of his stepmother, the State presented sufficient evidence of premeditation and deliberation and intent to kill so that the trial court was not required to instruct the jury on the lesser offenses of second-degree murder and assault with a deadly weapon inflicting serious injury where the evidence tended to show that defendant said "I got you" after he fatally shot his father; defendant fired four shots into the closet where his stepmother was hiding, reloaded his pistol, and said that if she was in the closet she'd better come out because he did not want to kill her; when the stepmother made no response, defendant fired into the closet again, and the stepmother screamed after being wounded; and the victims each suffered from three gunshot wounds.

### 2. Evidence and Witnesses § 318 (NCI4th)— murder trial— stolen money—possession by defendant—admissibility to show identity

A stolen plastic-encased two dollar bill found in defendant's possession at the time of his arrest was properly admitted into evidence in a murder trial to prove identity where the two dollar bill was stolen at the same time as the murder weapon, the murder weapon was not recovered from defendant's possession but was found adjacent to a store where defendant was arrested, and the two dollar bill established a link between defendant and the murder weapon.

**3. Evidence and Witnesses § 1446 (NCI4th)— chain of cus-
tody—no memory by arresting officer—sufficient showing**

The State sufficiently established the chain of custody of a
stolen plastic-encased two dollar bill found in defendant's pos-
session at the time of his arrest, although the arresting officer did
not remember finding the bill on defendant's person, where an
officer testified that the white bag he received from the arresting
officer at the time he transported defendant to the sheriff's
department contained the bill, and a second officer testified that
the bill was in the white bag he received from the transporting
officer at the sheriff's department.

**4. Constitutional Law § 374 (NCI4th)— juvenile—first-
degree murder—trial as adult—mandatory life sentence
without parole—not cruel and unusual punishment**

The statute requiring that a juvenile thirteen years of age or
older who is charged with a Class A felony be transferred to supe-
rior court for trial as in the case of an adult, N.C.G.S. § 7A-608,
and the statute requiring the imposition of a life sentence without
parole for first-degree murder by a person under the age of sev-
enteen, N.C.G.S. § 14-17, do not together violate constitutional
provisions prohibiting cruel and unusual punishment. U.S. Const.
amend. VIII; N.C. Const. Art. I, § 27.

Appeal by defendant from judgment entered 1 November 1996 by
Judge Knox V. Jenkins, Jr. in Johnston County Superior Court. Heard
in the Court of Appeals 23 February 1998.

Defendant was fifteen years old when he was charged with first
degree murder and assault with a deadly weapon with intent to kill
inflicting serious injury. Pursuant to G.S. 7A-608 his case was trans-
ferred to superior court. At trial in superior court, defendant was con-
victed of first degree murder and sentenced to life imprisonment
without parole. Defendant was also convicted of assault with a deadly
weapon with intent to kill inflicting serious injury and sentenced to a
minimum sentence of 50 months and a maximum sentence of 69
months in prison.

At trial, the State's evidence tended to show that Maggie Stinnett
was married to Carlos Stinnett, Sr. (Carlos). Defendant, Carlos
Dwayne Stinnett (Dwayne) was Carlos Sr.'s son and Maggie Stinnett's
stepson. Prior to November 1995, Carlos had very little contact with
Dwayne. During Maggie Stinnett's first two years of marriage to

Carlos, Carlos had never telephoned Dwayne nor received a call from Dwayne. Also, Maggie Stinnett had never met Dwayne. Dwayne lived with his mother Felicia Stinnett in Virginia Beach, Virginia.

In November 1995, Felicia Stinnett called Carlos and asked him to accept custody of Dwayne. She explained that Dwayne was having behavioral problems and she thought some time with his father might help. Carlos agreed to the arrangement and on 19 November 1995, Carlos and Maggie Stinnett drove to Virginia Beach and picked up Dwayne. The following day at Carlos and Maggie Stinnett's home, Dwayne told Ms. Stinnett that he wanted to go home to Virginia. When Carlos returned home from work, he called Dwayne's mother, Felicia. She refused to have Dwayne back at her home in Virginia.

Around 9:15 p.m. that evening, Carlos set the house alarm and the family retired for the evening. Their infant daughter was in the bedroom with Carlos and Maggie Stinnett. Around 10:00 p.m. Dwayne knocked on Carlos and Maggie's bedroom door. Carlos put on his clothes and went to the door while Maggie stepped into the closet to get her robe. From the closet, Maggie heard Carlos shout, "Dwayne no." Then she heard a gunshot, a fall, and about three more gunshots. Maggie then heard Dwayne say "I got you." Maggie closed the closet door and held it shut with her hands. Dwayne approached the closet door, and fired approximately four shots into the closet door. She testified that she then heard Dwayne leave the room and reload the gun. Dwayne came back to the closet door and said "If you are still in there, you'd better come out because I don't want to kill you." Maggie did not answer and Dwayne tried the closet door again. Dwayne fired four more shots into the closet and wounded Maggie. Maggie cried out when she was hit and stopped holding the closet door shut. Dwayne yelled "Oh shit" and stopped shooting. Maggie was still conscious and she heard Dwayne speak to the crying baby. She heard him open and close dresser drawers in the bedroom. Dwayne then left the house. After hearing a car engine start outside, Maggie left the closet and saw her husband lying on the bedroom floor. He appeared to be dead. The baby was no longer in her crib. Maggie locked the bedroom door, climbed out the bedroom window and sought help at a neighbor's house.

Defendant shot Maggie three times. Dr. Robert L. Thompson, a forensic pathologist at the chief medical examiner's office in Chapel Hill, testified that Maggie suffered a "through and through" wound to the abdomen, a "through and through" wound to the thigh, and a third wound which left a bullet embedded deep in the thigh. Carlos suf-

fered three gunshot wounds: one to the right pelvis; one "through and through" wound to the left chest; and one "through and through" wound to the back. Dr. Thompson testified that the victim died from a gunshot wound to the back. Dr. Thompson observed no gunshot residue on the body or clothing, but the victim's clothes were never chemically tested for residue. The apparent absence of residue about the clothing and body suggests that the shots were fired at a range of more than two feet. A bullet was removed from the deceased victim's body and turned over to law enforcement officers.

During the early morning hours of 21 November 1995, defendant was arrested at a Pantry convenience store in Sanford. Defendant had a baby with him at the time of his arrest. Lee County Deputy Sheriff Ron Lerche searched defendant and recovered from him a two dollar bill enclosed in a plastic-sheath as well as twelve unfired .38 caliber bullets.

Rhett Jones testified that he lived next door to the Pantry convenience store in Sanford and on 17 December 1995 he found a .357 revolver in his backyard near the fence dividing his property from the convenience store. There were four empty casings and two live rounds in the revolver. Lee County Deputy Sheriff James Owle learned that the gun had been stolen from Virginia Beach. Steven Sokolowski from Virginia Beach testified that the .357 revolver, identified as the weapon used by defendant, had been stolen from his home on 18 November 1995. The serial number on the gun discovered near the fence in Mr. Jones' yard was the same as the serial number on the gun stolen from Mr. Sokolowski's home. Mr. Sokolowski also identified the plastic-enclosed two dollar bill as another item stolen in the burglary of his home on 18 November 1995.

The Johnston County Sheriff's Department investigated the shooting at the Stinnett residence around 11:00 p.m. on 20 November 1995. They found no evidence of forced entry. Six bullets were collected from the Stinnett's master bedroom, one was recovered from the deceased victim's body and one was recovered later by a builder doing repairs. Six of the bullets could be matched uniquely to the gun found in Mr. Jones' yard. The eight cartridge cases found in the Stinnett's residence and the four empty shell cases found in the weapon when it was seized all uniquely matched the revolver.

A jury found defendant guilty of first degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. The trial court sentenced defendant to life imprisonment without parole

for the first degree murder charge and a minimum of 50 months and a maximum of 69 months in prison for the assault with a deadly weapon with intent to kill inflicting serious injury. Defendant appeals.

Attorney General Michael F. Easley, by Special Deputy Attorney General Robert J. Blum, for the State.

Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Janine Crawley Fodor, for defendant-appellant.

EAGLES, Judge.

[1] We first consider whether the trial court erred by failing to instruct the jury on the lesser included offenses of second degree murder and assault with a deadly weapon inflicting serious injury. Defendant argues that there was evidence of second degree murder and assault with a deadly weapon inflicting serious injury, and the trial court should have instructed on these lesser included offenses. Defendant argues that certain facts in evidence negate premeditation and deliberation. The facts relied on by the defendant are defendant's impulsiveness and inability to calculate the consequences of his actions because of his age and defendant's severe emotional turmoil about the circumstances surrounding his new living arrangements. We disagree.

A lesser included offense jury instruction must be given "when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed." State v. Jones, 291 N.C. 681, 687, 231 S.E.2d 252, 255 (1977). "The test for determining whether the jury must be instructed on second-degree murder is whether there is any evidence in the record which would support a verdict of second-degree murder." State v. Bates, 343 N.C. 564, 579, 473 S.E.2d 269, 277 (1996) (quoting State v. Conaway, 339 N.C. 487, 514, 453 S.E.2d 824, 841, cert. denied, —— U.S. ——, 133 L.Ed.2d 153 (1995)), cert. denied, —— U.S. ——, 136 L.Ed.2d 873 (1997).

Second degree murder is an unlawful killing of a human being with malice but without premeditation and deliberation. State v. Watson, 338 N.C. 168, 176, 449 S.E.2d 694, 699 (1994), cert. denied, 514 U.S. 1071, 131 L.Ed.2d 569 (1995). In addition, before a judge is required to give an instruction on assault with a deadly weapon inflicting serious injury, there must be evidence that defendant had no intent to kill. State v. Cain, 79 N.C. App. 35, 46, 338 S.E.2d 899, 905

(1986), *disc. review denied*, 316 N.C. 380, 342 S.E.2d 899 (1986). It is well established that

> [i]f the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is no evidence to negate these elements other than defendant's denial that he committed the offense, the trial [court] should properly exclude from jury consideration the possibility of a conviction of second degree murder.

*State v. Frye*, 341 N.C. 470, 501, 461 S.E.2d 664, 680 (1995) (quoting *State v. Strickland*, 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), *overruled in part on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986)), *cert. denied*, 517 U.S. 1123, 134 L.Ed.2d 526 (1996).

Here, there was sufficient evidence of premeditation and deliberation and defendant's intent to kill Maggie. Defendant's argument that he was in a state of "severe emotional turmoil" is only conjecture. The evidence showed that after defendant shot and fatally wounded his father, he said "I got you." Defendant had to reload his pistol after firing four shots into the closet where Maggie Stinnett was huddling in fear and then said "if you're in there, you'd better come out because I don't want to kill you, but if you don't come out I'm coming in." After reloading, when Maggie made no response, defendant started shooting again. Maggie then screamed after being wounded. Defendant never opened the closet door to check on Maggie. Finally, Carlos and Maggie Stinnett each suffered from three gunshot wounds. These facts are strong evidence of premeditation and deliberation and intent. There is no evidence that these shootings were done without premeditation and deliberation. Accordingly, the trial court was under no obligation to instruct on the lesser included offenses of second degree murder and assault with a deadly weapon inflicting serious injury. This assignment of error is overruled.

[2] We next consider whether the trial court erred by admitting into evidence the stolen plastic-encased two dollar bill. Defendant argues that admission of this evidence was prohibited by Rule 404(b) and Rule 403 and that the evidence was introduced without a proper foundation. Defendant argues that the two dollar bill was improperly admitted to show defendant's propensity to commit a crime and not admitted to prove identity. We disagree.

Here, the two dollar bill was admissible to show identity. The two dollar bill established a probative link between the defendant and the murder weapon. The murder weapon was not recovered in the defendant's possession but was found instead adjacent to the store where the defendant was arrested. The same weapon had been stolen from Mr. Sokolowski's house in Virginia Beach, where defendant lived just prior to the crime. The two dollar bill, which was in defendant's possession at the time he was arrested, was stolen from the same home at the same time the murder weapon was taken. Accordingly, we hold that the two dollar bill was properly admitted to prove identity.

[3] In addition the defendant argues that the plastic-encased two dollar bill was admitted without a proper foundation. We disagree. Identification of evidence for the purpose of admission need not be unequivocal. *State v. Bishop*, 293 N.C. 84, 88, 235 S.E.2d 214, 217 (1977). The trial court exercises its discretion

in determining the standard of certainty that is required to show that an object offered is the same as the object involved in the incident and is in an unchanged condition. A detailed chain of custody need be established only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered. Further, any weak links in a chain of custody relate only to the weight to be given the evidence and not to its admissibility.

*State v. Campbell*, 311 N.C. 386, 388-89, 317 S.E.2d 391, 392 (1984). (Citations omitted). At trial, Deputy Ron Lerche, the officer who arrested and searched defendant, testified that he did not recognize the two dollar bill and did not remember finding the bill on the defendant's person. However, Deputy Van Holley testified that the white bag he received from Deputy Lerche at the time he transported defendant to the Lee County Sheriff's Department contained the plastic-encased two dollar bill. Detective James Hinton testified that the plastic-encased two dollar bill was in the white bag when he received it from Deputy Van Holley at the Sheriff's Department. Although the arresting officer does not remember the plastic-encased two dollar bill, any arguably weak links in the chain of custody go to the weight of the evidence and not to the issue of whether the evidence should be admitted. Accordingly, we hold there was circumstantial evidence produced at trial sufficient to establish the chain of custody. This assignment of error is overruled.

**[4]** We next consider whether the mandatory language in G.S. 7A-608 coupled with the statutory provisions in G.S. 14-17 requiring the mandatory imposition of a life sentence without parole for first degree murder, taken together, violate the Eighth Amendment of the Constitution of the United States and the North Carolina Constitution.

G.S. 7A-608 states:

If the alleged felony constitutes a Class A felony and the court finds probable cause, the court **shall** transfer the case to the superior court for trial as in the case of adults.

(Emphasis added).

G.S. 14-17 provides that punishment for first degree murder shall be death or imprisonment for life "except that any such person who was under 17 years of age at the time of the murder shall be punished with imprisonment in the State's prison for life without parole."

G.S. 15A-1380.5, enacted by the 1994 Extra Session of the General Assembly, provides that persons sentenced to life imprisonment without parole are entitled to review of their sentence by a resident superior court judge of the county where originally sentenced when they have served 25 years and at two year intervals thereafter. The reviewing judge, in his discretion, shall recommend whether or not the defendant's sentence shall be altered or commuted by the governor or the executive branch agency the governor designates. Thus a sentence of life imprisonment without parole may confine a defendant for his natural life or may amount to an active sentence of twenty-five years imprisonment.

The defendant argues that construing together G.S. 14-17 and G.S. 7A-608 does not allow the judge or fact finder an opportunity to consider defendant's age or rehabilitative potential. Defendant argues that of the several states he researched, only Louisiana combines a mandatory transfer or waiver provision for murder with a mandatory sentence of life imprisonment without parole. Defendant argues that this combination impermissibly precludes any possible consideration of the offender's youth and accordingly violates the Eighth Amendment of the United States Constitution and Art. I, Sec. 27 of the North Carolina Constitution. After careful examination of the authorities cited and G.S. 15A-1380.5, we disagree.

North Carolina courts have consistently held that when a punishment does not exceed the limits fixed by statute, the punishment cannot be classified as cruel and unusual in a constitutional sense. *State v. Rogers*, 275 N.C. 411, 421, 168 S.E.2d 345, 350 (1969), *cert. denied*, 396 U.S. 1024, 24 L.E. 2d 518 (1970); *State v. Sweezy*, 291 N.C. 366, 385, 230 S.E.2d 524, 536 (1976). It is within the province of the General Assembly to enact a process for dealing with serious offenses committed by juveniles. *State v. Higginbottom*, 312 N.C. 760, 764, 324 S.E.2d 834, 837, (1985); see *Stanford v. Kentucky*, 492 U.S. 361, 106 L.E. 2d 306 (1989). The General Assembly has chosen a process that excludes juveniles accused of Class A felonies who are thirteen years of age or older from the preferred treatment of juvenile court disposition. Legislative bodies are free to make exceptions to the statutory rules that children are entitled to special treatment. *Thompson v. Oklahoma*, 487 U.S. 815, 823, 101 L.E. 2d 702, 711 (1988) (stating "[t]he experience of mankind, as well as the long history of our law, recognizes that there are differences which must be accommodated in determining the rights and duties of children as compared with those of adults."), quoting *Goss v. Lopez*, 419 U.S. 565, 590-91, 42 L.Ed. 2d 725 (1975)). The General Assembly has the constitutional authority to enact laws. Unless their enactments or the way they are applied offend our Constitution or the Constitution of the United States, we are bound by these enactments. Accordingly, this assignment of error is overruled.

No error.

Judges HORTON and SMITH concur.