No. 83,923

STATE OF KANSAS, *Appellee*, v. CURTIS LEE COLEMAN, JR., *Appellant*.

(26 P.3d 613)

Opinion filed July 13, 2001.

*Randall L. Hodgkinson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the briefs for appellant.

*Terra D. Morehead*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Curtis Lee Coleman, Jr., a 15-year-old, was prosecuted and sentenced as an adult. He was convicted by a jury of one count of premeditated first-degree murder in the shooting death of 10-year-old Shanell Cooper. On the murder conviction, the trial court imposed a life sentence without possibility of parole for 40 years. Coleman also was convicted of three counts of aggra-

vated assault on bystanders for which the trial court imposed a prison sentence of 13 months consecutive to the hard 40 sentence. On appeal, Coleman challenges the constitutionality of the statutory authority for his being prosecuted as an adult, contends that he was prejudiced by certain trial errors, and claims error in the trial court's imposing the hard 40 sentence.

The shooting occurred at approximately 8:30 p.m. on October 14, 1998. Coleman told police that earlier in the evening he had been driving in the 1900 block of Tennyson in Kansas City, Kansas, when Jason Clark ran out of his house, chased the vehicle Coleman was driving, and shot at Coleman several times. A young woman who was in the vehicle with Coleman testified that an unknown, unarmed male had chased after the car and that no shots were fired at the vehicle. She also testified that after being chased, Coleman said, "On his mamma somebody was going to get shot."

Coleman told police that he went to his brother's house, got a gun, and returned to the 1900 block of Tennyson. According to Coleman, as he slowed his vehicle, Jason Clark raised up off the porch with a gun. Coleman fired.

Occupants of nearby houses heard four or five shots. Shanell Cooper and Janell White were crossing the street from 1923 Tennyson to 1936 Tennyson. Marcus Haywood and Shondell Mays were on the porch at 1936 Tennyson. Shanell Cooper was struck by a bullet and made it to the porch at 1936 Tennyson before collapsing. One bullet went through the front wall at 1936 Tennyson and nicked the arm of the living room couch.

Constitutionality of K.S.A. 38-1636(a)(2).

Pursuant to K.S.A. 38-1636(a)(2) a juvenile who has attained the age of 14 at the time of the offense and is charged with what would be if committed by an adult an offgrid offense or a person felony with a firearm may be prosecuted as an adult. The statute provides that "the county or district attorney may file a motion requesting that the court authorize prosecution of the respondent as an adult under the applicable criminal statute. The respondent shall be presumed to be an adult. The burden of proof is on the respondent to rebut the presumption." K.S.A. 38-1636(a)(2). Coleman contends the presumption of adult status deprives him of due process.

Coleman did not raise this issue below. An issue not presented to the trial court generally will not be considered for the first time on appeal. *State v. Smith*, 268 Kan. 222, 243, 993 P.2d 1213 (1999). We have recognized three exceptions, however, to the general rule in cases where: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and which is finally determinative of the case; (2) consideration of the question raised for the first time on appeal is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of a trial court may be upheld on appeal although that court may have relied on the wrong ground or assigned a wrong reason for its decision. *State v. Mincey*, 265 Kan. 257, 267, 963 P.2d 403 (1998). In this case, the newly asserted theory involves only a question of law and assertedly involves denial of a fundamental right.

Our review of the constitutionality of a statute is unlimited. The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. *State ex. rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, 300, 955 P.2d 1136 (1998).

Coleman argues that he was "rubber stamped" under the presumption found in K.S.A. 38-1636(a)(2) and that the presumption denied him his right to procedural due process. Coleman also argues that the presumption shifts the burden of proof to the defendant in violation of due process.

Coleman relies on *In re J.L.*, 20 Kan. App. 2d 665, 891 P.2d 1125, *rev. denied* 257 Kan. 1092 (1995), which involves the termination of parental rights. "A parent's right to the custody and control of his or her children is a liberty interest protected by the Fourteenth Amendment to the United States Constitution." 20 Kan. App. 2d 665, Syl. ¶ 2.

Unlike a parent's right to custody and control of his or her children, adjudication as a juvenile is not a fundamental interest. See *People v. Hughes*, 946 P.2d 509, 516 (Colo. App. 1997) (accused has no liberty interest in being treated as a juvenile that would implicate procedural due process); *People v. Conat*, 238 Mich. App. 134, 158, 605 N.W.2d 49 (2000) (no constitutional right for an

accused to be treated as a juvenile); *Com. v. Williams*, 514 Pa. 62, 71, 522 A.2d 1058 (1987) (no special treatment for juveniles guaranteed by the Constitution). The special treatment of juvenile offenders on account of age is not an inherent or constitutional right but rather results from statutory authority, which can be withdrawn. See *State v. Angel C.*, 245 Conn. 93, 715 A.2d 652 (1998). Some legislatures have chosen to require prosecution as an adult for specified serious offenses or to require charges to be filed in criminal court subject to the juvenile's showing he or she belongs in a juvenile setting rather than criminal court. Those legislative measures have passed constitutional muster. See *State v. Stinnett*, 129 N.C. App. 192, 497 S.E.2d 696 (1998); *Com. v. Cotto*, 708 A.2d 806, 813 (Pa. Super. 1998); *In re Boot*, 130 Wash. 2d 553, 570-71, 925 P.2d 964 (1996).

In contrast to the mandatory schemes, the Kansas legislation describes circumstances in which a county or district attorney as well as the court may exercise discretion in determining whether adjudication as a juvenile or prosecution as an adult is appropriate. Procedural regularity sufficient to satisfy basic requirements of due process, therefore, is necessary. See *Kent v. United States*, 383 U.S. 541, 552-53, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966). K.S.A. 38-1636 provides that in certain circumstances the county or district attorney may request the court to authorize prosecution as an adult:

"(2) At any time after commencement of proceedings under this code against a respondent who was (A) 14, 15, 16, or 17 years of age at the time of the offense or offenses alleged in the complaint, if any such offense (i) if committed by an adult, would constitute an offgrid offense, a person felony, a nondrug severity level 1 through 6 felony or any drug severity level 1 or 2 felony; or (ii) was committed while in the possession of a firearm; or (B) charged with a felony or with more than one offense of which one or more constitutes a felony after having been adjudicated or convicted in a separate prior juvenile proceeding as having committed an offense which would constitute a felony if committed by an adult and the adjudications or convictions occurred prior to the date of the commission of the new act charged and prior to the beginning of an evidentiary hearing at which the court may enter a sentence as provided in K.S.A. 38-1655, and amendments thereto, the county or district attorney may file a motion requesting that the court authorize the prosecution of the respondent as a adult under the applicable criminal statute. *The respondent shall be presumed to be an adult. The burden of proof is on the respondent to rebut the presumption.*" (Emphasis added.)

K.S.A. 38-1636(e) sets forth eight factors the court is required to consider when determining whether to treat a defendant as an adult or juvenile:

"In determining whether or not prosecution as an adult should be authorized or designating the proceeding as an extended jurisdiction juvenile prosecution, the court shall consider each of the following factors: (1) The seriousness of the alleged offense and whether the protection of the community requires prosecution as an adult or designating the proceeding as an extended jurisdiction juvenile prosecution; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) whether the offense was against a person or against property. Greater weight shall be given to offenses against persons, especially if personal injury resulted; (4) the number of alleged offenses unadjudicated and pending against the respondent; (5) the previous history of the respondent, including whether the respondent had been adjudicated a juvenile offender under this code and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence; (6) the sophistication or maturity of the respondent as determined by consideration of the respondent's home, environment, emotional attitude, pattern of living or desire to be treated as an adult; (7) whether there are facilities or programs available to the court which are likely to rehabilitate the respondent prior to the expiration of the court's jurisdiction under this code; and (8) whether the interests of the respondent or of the community would be better served by criminal prosecution or extended jurisdiction juvenile prosecution."

Considering a similar statutory scheme, the Minnesota Court of Appeals found the schemes' procedures satisfied due process. *Matter of Welfare of L.J.S.*, 539 N.W.2d 408 (Minn. App. 1996). The presumptive certification provision of the Minnesota statute provided:

" 'It is presumed that a proceeding involving an offense committed by a child will be certified to district court if:
(1) the child was 16 or 17 years old at the time of the offense; and
(2) the delinquency petition alleges that the child committed an offense that would result in a presumptive commitment to prison under the sentencing guidelines and applicable statutes, or that the child committed any felony offense while using ° ° ° a firearm.' Minn. Stat. § 260.125, subd. 2a (1994)." 539 N.W.2d at 412.

L.J.S. argued that the statutory presumption improperly shifted the burden of proof to him and created an irrebuttable presumption. See *Sandstrom v. Montana*, 442 U.S. 510, 523-24, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979) (in a criminal case, a presumption that

shifts the burden of proof on an element of the offense or that establishes a conclusive, irrebuttable presumption is incompatible with due process).

The Minnesota court observed that the presumption applied only to a pretrial procedure and that criminal defendants routinely bear the burden of persuasion on pretrial motions. 539 N.W.2d at 413. The Minnesota presumptive certification statute does not affect the prosecution's burden of proving an element of the offense. Thus, it does not conflict with the presumption of innocence. 539 N.W.2d at 413. The Minnesota court also rejected the contention that the presumptive certification improperly created an irrebuttable presumption. The statute provides that the juvenile may rebut the presumption by showing that public safety would be served if the juvenile court retained jurisdiction. 539 N.W.2d at 412 (citing Minn. Stat. § 260.125, subd. 2a [1994]). Finding that the presumption of certification neither shifts the burden of persuasion on any element of the offense nor is irrebuttable, the Minnesota court concluded that the statute did not violate due process. It stated in conclusion that "[t]he presumption merely determines which court will try the case and evaluate the elements of the offense." 539 N.W.2d at 413.

Like the Minnesota statute, K.S.A. 38-1636(a)(2) creates a rebuttable presumption. The presumption can be overcome. See *In re J.D.J.*, 266 Kan. 211, 967 P.2d 751 (1998) (affirming denial of State's motion for prosecution as an adult). K.S.A. 38-1636(e) spells out precisely what factors will be taken into consideration in determining whether the juvenile has succeeded in doing so. Coleman had the guidance of 38-1636(e) and the opportunity to present evidence opposing the State's motion. His evidence may have fallen short, but the procedure afforded him did not.

The presumption in K.S.A. 38-1636(a)(2) is rebuttable. The presumption does not improperly shift the burden of proof to the defendant on any elements of the offenses charged. The presumption in K.S.A. 38-1636(a)(2) does not violate procedural due process rights.

Self-defense instruction.

Coleman argues that the trial court erred in refusing his request to instruct the jury on self-defense. When considering the refusal of a trial court to give a requested instruction, we view the evidence in the light most favorable to the requesting party. *State v. Sims,* 265 Kan. 166, 168, 960 P.2d 1271 (1998).

Even viewed in the light most favorable to Coleman, the evidence does not support the giving of a self-defense instruction. Coleman told police that, after being shot at as he drove down Tennyson, he went to his brother's house to get a gun and then returned to the 1900 block of Tennyson. Coleman chose to arm himself and return to the scene of the earlier incident in order to engage in the conflict. In those circumstances, a self-defense instruction was not appropriate. See *State v. Rutter,* 252 Kan. 739, 746, 850 P.2d 899 (1993).

Voluntary manslaughter instruction.

Coleman did not request that the trial court instruct the jury on voluntary manslaughter. We review this issue under a clearly erroneous standard. K.S.A. 2000 Supp. 22-3414(3). Failure to give an instruction is clearly erroneous only if an appellate court reaches a firm conviction that there is a real possibility that the jury would have returned a different verdict if the instruction had been given. *State v. Humphery,* 267 Kan. 45, 62, 978 P.2d 264 (1999). There is no merit to Coleman's argument.

K.S.A. 21-3403 defines voluntary manslaughter as "the intentional killing of a human being committed: (a) Upon a sudden quarrel or in the heat of passion; or (b) upon an unreasonable but honest belief that circumstances existed that justified deadly force . . . ." There is no evidence that Coleman's actions were the result of an extreme emotional state of mind that might cause an ordinary person to act on impulse without reflection. See *State v. Dixon,* 252 Kan. 39, 45-46, 843 P.2d 182 (1992). Nor is there any evidence from which the jury could have found that Coleman believed his actions were taken in self-defense. In his statement to police, Coleman said that he fired after seeing someone on the porch raise up with a gun. As we already have noted, Coleman chose to arm himself and return to the 1900 block of Tennyson in

order to engage in conflict. In those circumstances, he could not have harbored an honest belief his actions were in self-defense.

Prosecutor's remarks in closing argument.

The interest of the State, on behalf of which the prosecutor appears in a criminal case, is that justice is done. Coleman contends that justice was not done and he was denied a fair trial by the prosecutor's improper remarks in closing argument. We use a two-step analysis for determining whether the closing argument requires reversal. The first step is to determine whether the remarks exceeded the considerable latitude allowed. If so, the second step is to determine whether they were so gross and flagrant as to prejudice the jury against the accused and deny a fair trial. *State v. Pabst*, 268 Kan. 501, 505, 996 P.2d 321 (2000).

We have examined Coleman's contentions regarding the closing argument and determined that only one of the remarks merits examination for possible prejudicial effect. It was made in response to defense counsel's arguing that neither the State's investigation nor its proof eliminated the possibility that there was someone on the porch at 1936 Tennyson with a gun when Coleman drove by the second time. Illustrating the point, defense counsel asked, "Where is Tony Quinn; where is Willie Ford? Where are they at to set it out?" and "If Cederic was on the porch as one of their own witnesses testified, where is he? You know, this is not a complete case." In the final segment of the State's argument, the prosecutor responded, "She asked well, where are Tony Quinn and Willie Ford? She knows where they are."

Upon objection, the trial judge invited counsel to the bench where the following discussion took place:

"[Prosecutor] I want you to understand where I was going with my statement. Where I was going was that because they are suspects in the case I cannot even attempt to bring them into this courtroom and [defense counsel] knows that and that's what I'm faced with. I can't force people to come in that are suspects in cases and that's where I was going at.

"[The Court] There is no evidence before the jury that they are suspects in this case. You are allowed to talk about—you could have said the defense has the same opportunity I have to bring in witnesses. They didn't bring them in, that's a fair comment. To say defense counsel knows where they are, that's wrong.

"[Prosecutor] That's not what I was intending.

"[The Court] I'm sustaining her objection to that comment and I'm going to admonish the jury to disregard the same.

. . . .

"I'm going to slide over here for just a second. I have to admonish you that the last comment that defense counsel knows where these people are was improper comment by the State and I have sustained the objection. You are not to consider that as evidence in this case."

Considering the circumstances of this case, the substantial evidence against defendant, the nature of the remarks, and the trial judge's admonition, we conclude that the possible prejudicial effect of the prosecutor's remarks on the jury does not amount to denial of a fair trial.

Constitutionality of the hard 40 sentence.

Coleman argues that *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), applies and its reasoning leads to the conclusion that the hard 40 sentencing procedure is unconstitutional. This argument was thoroughly considered and rejected in *State v. Conley*, 270 Kan. 18, 11 P.3d 1147, *cert. denied* 532 U.S. 932 (2000). The imposition of the hard 40 sentence, under the facts of this case, did not violate Coleman's Sixth Amendment rights.

Imposition of the hard 40 sentence.

K.S.A. 21-4636 provides that aggravating circumstances shall be limited to those specified by the legislature. In addition to finding that Coleman's actions created a great risk of death to more than one person, the sentencing judge considered two aggravating factors not listed in K.S.A. 21-4636—the age of the victim and the victim's state of mind between her being shot and dying. At sentencing, the trial judge said:

"I'll tell you what—another factor this Court has considered in what I'm about to do and why you're getting the hard 40 and that's the age of the victim in this case. . . .

". . . The other thing was the fact that she was hit in the yard and I can't imagine what she must have been feeling as she was running from the point where she was shot to the steps where she died."

Consideration of the two nonstatutory circumstances was clearly improper.

During the sentencing proceedings, the trial judge did not comment on mitigating factors. Coleman contends that three of the statutory mitigating circumstances apply: no significant history of prior criminal activity, his committing the crime under the influence of extreme emotional disturbance, and his age at the time of the murder. See K.S.A. 21-4636(a), (b), and (g). The crime was not committed under the influence of extreme emotional disturbance, as is demonstrated by the lapse of time between what Coleman claimed was provocation and his return to the scene. The other two factors were well known to the trial judge. Coleman was 15 years old at the time of the murder, and his presentence investigation report shows that he had four juvenile misdemeanor adjudications.

The trial judge did not mention weighing aggravating and mitigating circumstances. We infer that the trial judge determined the three aggravating circumstances outweighed any mitigating circumstances. With the two nonstatutory aggravating circumstances removed from the balance, the circumstances must be reweighed. Such reweighing must be done by the trial court. K.S.A. 21-4635(c). Thus, we necessarily vacate the hard 40 sentence and remand to the trial court for reweighing of the one remaining aggravating circumstance and the mitigating circumstances.

We affirm Coleman's convictions. No issue was raised as to his sentencing for the aggravated assaults. We vacate the hard 40 sentence and remand for further proceedings in accordance with this opinion.