STATE OF NORTH CAROLINA v. CHRISTOPHER LEE FERGUSON

No. COA00-642

(Filed 7 August 2001)

### 1. Evidence— subsequent crime or act—defendant's use of handgun

The trial court did not err in a prosecution for first-degree murder, attempted murder, and robbery with a dangerous weapon which occurred in June 1995 by admitting evidence under N.C.G.S. § 8C-1, Rule 404(b) from a witness about an incident in Asheville in July 1995 where defendant had a handgun and threatened to kill someone if she did not tell him where he could locate his marijuana, because: (1) the evidence tended to show that defendant was present in North Carolina in July 1995, possessed and was involved in the sale of marijuana in July 1995, possessed a handgun in July 1995, and had motive to commit the crimes in this case; (2) there was temporal proximity between the Asheville incident and the crimes in this case, as well as similarity between the incidents when both involved the use of a handgun; and (3) defendant cannot show how he was prejudiced by the admission of this evidence when plenary evidence of defendant's guilt was offered at trial.

### 2. Constitutional Law— North Carolina—right to be present at all stages—in-chambers conference

Although the trial court erred in a first-degree murder, attempted murder, and robbery with a dangerous weapon case by holding an unrecorded in-chambers conference with the attorneys in defendant's absence in violation of North Carolina Constitution Article I, Section 23, the error was harmless beyond a reasonable doubt because: (1) the substance of the unrecorded in-chambers conference was reconstructed and summarized for the record, and defendant was present in the courtroom when the trial court reconstructed and summarized what transpired; and (2) defendant had ample opportunity to make any objections or comments to his attorney, or to inquire of his attorney regarding the substance of the conference.

### 3. Evidence— photostatic reproduction—hotel registration card—authenticity—chain of custody

The trial court did not err in a first-degree murder, attempted murder, and robbery with a dangerous weapon case by admitting

STATE v. FERGUSON

[145 N.C. App. 302 (2001)]

a photostatic reproduction of a hotel registration card, because: (1) defendant's signature was properly authenticated under N.C.G.S. § 8C-1, Rule 901(a) by a comparison of his university identification card to the signature on the motel registration card; (2) although the original motel registration card was turned over to the police and its location was unknown, the owner of the motel testified that the exhibit was an exact copy of the original registration card and defendant has not raised any real issue as to the authenticity of the original; and (3) a detailed chain of custody was not necessary when there was no reason to believe the document was altered.

### 4. Homicide— first-degree murder—indictment—constitutionality

Although defendant contends the trial court erred by denying his motion to dismiss the indictment for first-degree murder based on a failure to disclose the theory and precise elements, defendant concedes that this precise issue has been considered and rejected by our Supreme Court.

Appeal by defendant from judgments entered 20 September 1997 by Judge D. Jack Hooks in Duplin County Superior Court. Heard in the Court of Appeals 14 May 2001.

*Attorney General Michael F. Easley, by Special Deputy Attorney General James Peeler Smith, for the State.*

*Margaret Creasy Ciardella, for defendant-appellant.*

EAGLES, Chief Judge.

Defendant Christopher Lee Ferguson was tried capitally and found guilty of first-degree murder, attempted murder and robbery with a dangerous weapon in Duplin County Superior Court on 17 September 1997. Defendant was sentenced on 20 September 1997 to consecutive sentences of life imprisonment without parole for murder, 190 to 237 months for attempted murder, and 89 to 116 months for robbery with a dangerous weapon. Defendant appeals. After careful review, we hold that defendant received a fair trial free from prejudicial error.

In the light most favorable to the State, the evidence tended to show the following: On 26 June 1995, defendant and Marcos Nunez (Nunez) rented a room at the Liberty Inn Motel in Wallace. There, defendant and Nunez met Arturo Gonzalez (victim) and Edwin

Caranza (Caranza) to discuss a drug transaction. Caranza testified that defendant and Nunez agreed to pay the victim $30,000.00 for thirty pounds of marijuana.

The next morning, defendant and Nunez followed the victim and Caranza to a house located at 681 Kinsey Mill Road in Duplin County where the marijuana was located. Defendant and Nunez were driving an Oldsmobile owned by Nunez's girlfriend, Yolanda Munoz (Munoz). When the four men arrived at the Kinsey Mill Road house, Caranza testified that the victim directed him to retrieve the drugs from behind the house. When Caranza returned with the marijuana, he placed the bags on the ground to be counted. Nunez and Caranza then knelt on the ground to count the drugs.

Caranza testified that as he was kneeling on the ground, he saw defendant shoot the victim who fell to the ground. Caranza then turned toward defendant and saw a gun in defendant's hand. Defendant then shot Caranza in the leg. As Caranza was running away, defendant again shot him in the hand. Caranza, however, managed to keep running. Later, Caranza took a bus to Miami where he remained for approximately four to five months. When Caranza returned to North Carolina, he identified defendant as the person who shot him and the victim.

Nunez also testified at defendant's trial. Nunez testified that as he was kneeling on the ground he heard a gun shot, saw blood splatter and turned to see defendant holding a gun. Nunez then ran toward the front of the house. As he was running, Nunez heard two more shots. Defendant then yelled to Nunez to stop running and help him with the marijuana. Nunez returned and defendant loaded marijuana into the trunk of the Oldsmobile.

At approximately 4:00 a.m. 28 June 1995, Nunez called Dion Newkirk (Newkirk) and told Newkirk that defendant had shot someone. Nunez called Newkirk later that morning, at approximately 10:00 a.m., and asked Newkirk to meet him and defendant at a Hardees Restaurant in Goldsboro because they were lost. Newkirk testified that when he arrived at the Hardees, both Nunez and defendant had blood on their clothing. Newkirk testified that Nunez again told him that defendant shot someone. Defendant told Newkirk that he (defendant) had "shot [the victim and], . . . that Nunez was screaming and yelling like a little bitch." Later that day, Newkirk saw bloody marijuana bags in the trunk of the Oldsmobile. Newkirk further testified that defendant was carrying a small black handgun.

That morning, the victim's body was found in the backyard of the Kinsey Mill Road house. It was later determined by Dr. Thomas Clark, a forensic pathologist, that the victim had sustained a fatal close range gunshot wound to the right side of his head. A loaded Colt .38 caliber semiautomatic pistol was found in the victim's waistband. Near the victim's body, Detective Ramsey of the Duplin County Sheriff's Department found several bags and bricks of marijuana.

Defendant presented videotaped depositions of five witnesses all of whom testified that defendant was in New York at the time of the shootings. Defendant did not testify.

[1] By his first assignment of error, defendant contends that the trial court committed reversible error by admitting evidence under Rule 404(b) of the North Carolina Rules of Evidence. We disagree.

Rule 404(b) of the North Carolina Rules of Evidence provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake . . . .

G.S. 8C-1, Rule 404(b). Our Supreme Court has held that Rule 404(b) states

> a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (quoting *State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987)); *State v. King*, 343 N.C. 29, 43, 468 S.E.2d 232, 241 (1996). Thus, even though the evidence may tend to show a defendant's propensity to commit other crimes, wrongs or acts, it is admissible under Rule 404(b) so long as it is relevant for some other purpose. *Coffey*, 326 N.C. at 278-79, 389 S.E.2d at 54.

When prior incidents are offered for a permissible purpose, "the ultimate test of admissibility is whether they are sufficiently similar and not so remote as to run afoul of the balancing test between probative value and prejudicial effect" of Rule 403. *State v. West*, 103

N.C. App. 1, 9, 404 S.E.2d 191, 197 (1991). The similarities between the other crime, wrong or act and the crime charged need not, however, " 'rise to the level of the unique and bizarre' in order for the evidence to be admitted under Rule 404(b)." *State v. Thomas*, 350 N.C. 315, 356, 514 S.E.2d 486, 511 (1999) (quoting *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 891 (1991)). Moreover, remoteness in time generally goes to the weight of the evidence not its admissibility. *State v. Hipps*, 348 N.C. 377, 405, 501 S.E.2d 625, 642 (1998).

Here, Rhonda Bethea (Bethea) testified on behalf of the State at defendant's trial. During the summer of 1995, Bethea lived next door to Munoz in Asheville. Bethea testified that she first became acquainted with defendant in June 1995 when she, along with Munoz, drove defendant and Nunez from Wallace to Asheville. Bethea then testified that approximately one month after her initial encounter with defendant in June 1995, she saw defendant in Asheville with a handgun. When the State questioned Bethea about the circumstances surrounding this incident in Asheville, the trial court sustained defendant's objection and a *voir dire* of the witness ensued.

During the *voir dire* hearing, Bethea testified that in July 1995, defendant arrived at her apartment in Asheville with a handgun. At the time, Bethea, her two year old daughter and a sixteen year old friend, "Chicago," were in the apartment. Bethea then testified that at her apartment defendant

> was yelling at [Chicago] asking her where was his weed was [sic] at, if she didn't tell him, he was going to kill her. She kept saying—well, she was crying and she was saying, I don't where your weed is at. I don't know what you're talking about. I was saying, she has nothing to do with this, please, let my daughter out of the room. And he said, I don't give a—I'll kill them both. I want my weed.
>
> Q. And did he finally—how did—he didn't kill either one of them; is that correct?
>
> A. No.
>
> Q. Did he finally leave?
>
> A. Yes, sir.
>
> Q. How long was he in the room with them?
>
> A. I would say probably about five or ten minutes.

STATE v. FERGUSON

[145 N.C. App. 302 (2001)]

At the conclusion of the *voir dire* hearing, the trial court ruled that the evidence concerning the incident in Asheville was admissible under Rule 404(b) because it tended to show that defendant was present in North Carolina in July 1995, possessed and was involved in the sale of marijuana in July 1995, possessed a handgun in July 1995, and had motive to commit the Duplin County crimes. The trial court further found that there was temporal proximity between the Duplin County crimes and the incident in Asheville, as well as similarity between the incidents because both involved the use of a handgun. Finally, the trial court concluded that although the evidence possessed some prejudicial effect, the prejudicial effect was outweighed by the probative value of the evidence. Following Bethea's testimony, the trial court gave a limiting instruction to the jury.

Here, defendant argues that the incidents in Asheville and Duplin County were so dissimilar and remote in time as to run afoul of the balancing test between probative value and prejudicial effect. "The party who asserts that evidence was improperly admitted usually has the burden to show the error and that he was prejudiced by its admission." *State v. Anthony*, 133 N.C. App. 573, 579, 516 S.E.2d 195, 199 (1999). Evidentiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial. *State v. Campbell*, 133 N.C. App. 531, 540, 515 S.E.2d 732, 738 (1999). Thus, assuming *arguendo* that defendant has met his burden of showing this Court that evidence of the Asheville incident was not admissible under Rule 404(b), he is still required to show he was prejudiced by its admission. *Id.* On this record, he cannot do so.

Plenary evidence of defendant's guilt was offered at trial. Caranza testified that he saw defendant shoot the victim on 27 June 1995. Cranaza further testified that immediately after defendant shot the victim, defendant shot him, wounding him in the hand and the leg. Nunez testified that on the morning of 27 June 1995, he heard several gunshots, saw blood and saw defendant holding a handgun. Finally, Newkirk testified that he saw defendant with a handgun on 28 June 1995, and that defendant admitted to Newkirk that he shot the victim. On this record, defendant cannot show that if the trial court had excluded Bethea's testimony, a different result would have been reached at trial. This assignment of error fails.

[2] By his next assignment of error, defendant contends that the trial court committed reversible error by holding an unrecorded in-chambers conference with the attorneys in defendant's absence.

Defendant argues that by holding such an in-chambers conference, the trial court violated his nonwaivable constitutional right to be present at every stage of his capital trial. Based on *State v. Moss*, 332 N.C. 65, 418 S.E.2d 213 (1992), we are compelled to hold that under Article I, Section 23 of the North Carolina Constitution the trial court erred in failing to insure defendant's presence at every stage of his capital trial. Here, we conclude that the State has shown that the error was harmless beyond a reasonable doubt.

At the outset we note that "[t]hough alluding to the federal constitution as a basis of the right to presence, defendant's argument relies exclusively on the definition of the right contained in North Carolina law. We limit our discussion accordingly." *State v. Adams*, 335 N.C. 401, 408, 439 S.E.2d 760, 763, n.1 (1994).

Article I, Section 23 of the North Carolina Constitution provides: "In all criminal prosecutions, every person charged with a crime has the right to be informed of the accusation and to confront the accusers and witnesses with other testimony . . . ." "This protection guarantees an accused the right to be present in person at every stage of his trial." *State v. Payne*, 320 N.C. 138, 139, 357 S.E.2d 612, 612 (1987); *State v. Exum*, 343 N.C. 291, 293, 470 S.E.2d 333, 334 (1996). This State constitutional protection imposes on the trial court the affirmative duty to insure a capital defendant's presence at every stage of a capital trial. *Exum*, 343 N.C. at 294, 470 S.E.2d at 334; *Moss*, 332 N.C. at 73-74, 418 S.E.2d at 218; *State v. Smith*, 326 N.C. 792, 794, 392 S.E.2d 362, 363 (1990). Furthermore, it is well settled in North Carolina that "the right to presence cannot be waived in capital cases and includes chambers conferences with counsel." *State v. Call*, 349 N.C. 382, 398, 508 S.E.2d 496, 506 (1998); *Exum*, 343 N.C. at 294, 470 S.E.2d at 334-35; *State v. Huff*, 325 N.C. 1, 29, 381 S.E.2d 635, 651 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L.Ed.2d 777 (1990).

Our courts have found error where the trial court conducted in-chambers conferences in a defendant's absence even though counsel for both the State and defendant were present. *State v. Call*, 349 N.C. 382, 508 S.E.2d 496 (1998); *State v. Exum*, 343 N.C. 291, 470 S.E.2d 333 (1996); *State v. Brogden*, 329 N.C. 534, 407 S.E.2d 158 (1991).

However, error caused by the absence of the defendant at some portion of his capital trial does not require automatic reversal. This Court has adopted the "harmless error" analysis in cases where a defendant is absent during a portion of his capital trial.

The State has the burden of establishing that the error was harmless beyond a reasonable doubt.

*Brogden*, 329 N.C. at 541, 407 S.E.2d at 163 (internal citations omitted); *Exum*, 343 N.C. at 295, 470 S.E.2d at 335. If the State can establish that an error is harmless beyond a reasonable doubt, a new trial is not required. *Exum*, 343 N.C. at 295-96, 470 S.E.2d at 335; *Moss*, 332 N.C. at 74, 418 S.E.2d at 218.

Thus, "[n]otwithstanding an accused's right to be present, certain violations of this right may be harmless if such appears from the record." *State v. Buchanan*, 330 N.C. 202, 222, 410 S.E.2d 832, 844 (1991). "An error is harmless beyond a reasonable doubt if it did not contribute to the defendant's conviction." *State v. Nelson*, 341 N.C. 695, 701, 462 S.E.2d 225, 228 (1995). Even though an in-chambers conference is not recorded, if the "nature and content of the private discussion" can "be gleaned from the record," for example by a subsequent summary of the conference on the record by the trial court, then the reviewing court may review the record to determine whether the defendant was prejudiced. *Exum*, 343 N.C. at 295-96, 470 S.E.2d at 335; *State v. Hayes*, 130 N.C. App. 154, 177, 502 S.E.2d 853, 869 (1998), *aff'd in part and modified in part*, 350 N.C. 79, 511 S.E.2d 302 (1999).

Here, the record reveals that at the end of the court proceedings on Friday, 12 September 1997, the trial court held a conference with counsel and defendant, out of the presence of the jury. During the 12 September conference, defendant was called regarding his decision not to testify on his own behalf. The record also reflects that there was a discussion regarding the availability of alibi witnesses to testify on behalf of defendant Monday morning, 15 September 1997. The defense then rested, subject to the possibility of reopening on Monday morning for the purpose of presenting additional witnesses.

At the beginning of court on Monday morning with the defendant present, the following transpired out of the presence of the jury:

THE COURT: Now, I believe that on Friday the Defendant rested subject to reopening this day, is that correct, sir.

MR. SAPP: Yes, your Honor.

THE COURT: And I believe that the understanding that I had with you was that the witnesses from New York who had—at the

time that you advised me that they were then in Rocky Mount, North Carolina, there was one who we had concerns about not being able to do [sic] be here today, a minister.

MR. SAPP: Yes, sir.

THE COURT: And I told you to let me know over the weekend, we had set up a conference call and that we would make plane ticket arrangements. I have heard nothing from you—and it is my understanding Mr. Sapp *from a brief conversation in chambers with counsel* that there would be no further evidence for the Defendant in the guilt innocence phase; that correct, sir. (Emphasis added).

MR. SAPP: That is correct, Your Honor.

THE COURT: Anything further in that line for the Defendant.

MR. SAPP: No.

Here, the substance of the unrecorded in-chambers conference was reconstructed and summarized for the record. Furthermore, the record reflects that defendant was present in the courtroom when the trial court reconstructed and summarized what transpired in the in-chambers conference. Under these circumstances, defendant had ample opportunity to make any objections or comments to his attorney, or to inquire of his attorney regarding the substance of the conference. We have carefully reviewed the record and conclude that although the trial court erred by conducting the conference in defendant's absence, the error was rendered harmless beyond a reasonable doubt by the trial court's actions in assuring that the record reflects what transpired during that conference. *Call*, 349 N.C. at 398, 508 S.E.2d at 507. Accordingly, the assignment of error fails.

[3] Next, defendant contends that the trial court erred by admitting a photostatic reproduction of a hotel registration card. Defendant argues that (1) the signature on the card was not properly authenticated, (2) the card was not the best evidence, and (3) the State failed to establish a chain of custody. We disagree.

Danny Norris (Norris), the owner of the Liberty Inn Motel (motel) in Wallace, testified at defendant's trial. Over objection, Norris identified State's Exhibit 18 as a copy of a registration card used at the motel, dated 26 June 1995. Norris testified that the card routinely is filled out by customers at the time they check into the motel and is then maintained in the motel's business records. When defendant

again objected to the introduction of the registration card, a *voir dire* of Norris was conducted.

During the *voir dire*, Norris testified that prior to defendant's trial the original registration card was turned over to the police. Norris further testified that although he did not remember registering defendant at the motel on 26 June 1995 he did recognize the registration card labeled State's Exhibit 18.

> I recognize my handwriting on the number of—the number of the room that he was assigned and I recognize my handwriting and the amount of money that he paid. And all the other writing is his except for the date. I recognize the date as my handwriting.

At the conclusion of the *voir dire*, the trial court overruled defendant's objections as to the admissibility of the registration card. Norris then testified that the registration card was signed "Saladin Pasha" and the address provided by the guest was 1933 B North Hills Drive, Raleigh, North Carolina.

Michael Downing, a detective with the Asheville Police Department, testified that on 24 August 1995 he saw defendant at the Asheville Police Department. When Downing asked defendant for identification on 24 August 1995, defendant identified himself as "Saladin Pasha." Downing testified that defendant then handed him a North Carolina Central University student identification card which contained defendant's photograph and the signature "Saladin Pasha," and provided his address as 1933 B North Hills Drive, Raleigh, North Carolina. The North Carolina Central University student identification card, labeled State's Exhibit 26, was admitted without objection. State's Exhibits 18 and 26 were then handed up to the jury in order for comparison of the signatures contained on the motel registration card and the university identification card.

Defendant relies primarily on *State v. Austin*, 285 N.C. 364, 204 S.E.2d 675 (1974) to support his argument that the trial court erred by admitting the copy of the 26 June 1995 motel registration card. In *Austin*, our Supreme Court held that it was error for a motel registration card bearing the purported signature of the defendant to be admitted into evidence when the clerk neither knew the defendant nor registered him at the hotel. The *Austin* Court reasoned that the card was not properly admitted because "the signature[] had not been *authenticated*, that is, the State did not present evidence . . . that it was actually the . . . defendant[] who had signed the card[]." *State v.*

*Ligon,* 332 N.C. 223, 235, 420 S.E.2d 136, 141 (1992). *Austin* is inapposite here.

Pursuant to Rule 901 of the North Carolina Rules of Evidence, every writing sought to be admitted must first be properly authenticated. G.S. 8C-1, Rule 901(a). Rule 901(b)(3) of the North Carolina Rules of Evidence provides that a jury may authenticate a document by comparing a known sample of a person's handwriting with the handwriting on a disputed document. G.S. 8C-1, Rule 901(b)(3). Expert or other testimony is not required. Here, the State offered the signature on defendant's university identification card to the jury for comparison to the signature on the motel registration card. This was a proper method of authentication. Therefore, we conclude that the motel registration card was properly authenticated and *Austin* does not apply.

We also reject defendant's "best evidence rule" argument. When an original document is lost or destroyed, cannot be obtained or is in the possession of an opponent, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances would be unfair to admit the duplicate in lieu of the original." G.S. 8C-1, Rule 1003. Here, Norris testified that State's Exhibit 18 was an "exact copy" of the original registration card. Although there is nothing in the record to indicate what happened to the original motel registration card after it was turned over to the police, defendant has not raised any real issue as to the authenticity of the original. Moreover, the circumstances presented here do not indicate that it would have been unfair to admit the copy of the registration card. Therefore, we hold that the trial court correctly found that neither Rule 1003 exception applied requiring the production of the original document.

Defendant further argues that the State failed to establish a chain of custody for either the original or the copy of the motel registration card. Admission of evidence at trial is in the trial court's discretion, and the identification of such evidence need not be unequivocal. *State v. Smith,* 134 N.C. App. 123, 516 S.E.2d 902 (1999); *State v. Stinnett,* 129 N.C. App. 192, 497 S.E.2d 696 (1998). A trial court

exercises its discretion "in determining the standard of certainty that is required to show that an object offered is the same as the object involved in the incident and is in unchanged

condition. A detailed chain of custody need be established only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered. Further, any weak links in a chain of custody relate only to the weight to be given the evidence and not to its admissibility.

*Stinnett*, 129 N.C. App. at 198, 497 S.E.2d at 700 (quoting *State v. Campbell*, 311 N.C. 386, 388-89, 317 S.E.2d 391, 392 (1984)); *State v. Jones*, 342 N.C. 523, 536, 467 S.E.2d 12, 20 (1996). Here, the trial court properly exercised its discretion in determining that the copy of the motel registration card was "involved in the incident" and was in unchanged condition. Although the document may be of the type that is susceptible to alteration, there is no reason to believe that the document was, in fact, altered. Therefore, under the circumstances presented here, a detailed chain of custody was not necessary. Our courts have consistently stated that any weak links in a chain of custody go to the weight of the evidence, not its admissibility. *Campbell*, 311 N.C. 386, 389, 317 S.E.2d 391, 392 (1984); *Smith*, 134 N.C. App. at 126, 516 S.E.2d at 905. This assignment of error fails.

[4] Finally, defendant contends that the trial court erred by denying his motion to dismiss his indictment for first degree murder. Defendant argues that the indictment was faulty in that it "failed to disclose the theory of first degree murder and failed to disclose the precise elements against which defendant would have to defend himself, which failure violated defendant's constitutional rights." Defendant acknowledges that he has raised this issue for preservation purposes and concedes that this precise issue was considered and rejected by our Supreme Court in *State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326 (2000). Accordingly, this assignment of error fails.

No error.

Judges McGEE and TYSON concur.