TIMMONS-GOODSON, Judge.
Barry Wayne Marcus ("defendant") appeals his convictions of first-degree murder, felony larceny, and breaking and/or entering. For the reasons stated herein, we find no error in the trial.
The State's evidence at trial tends to show the following: On 22 January 2001, defendant shot his grandfather, Lester Maness ("Maness"), five times as Maness arrived home from the small country store that he owned and operated. Maness had in his possession at the time of the shooting a bag of money which constituted proceeds from the store. Defendant first approached Maness and asked for money. When Maness refused to give defendant money, defendant shot Maness, took the bag of money and fled. Upon being called to the scene of the shooting, Loria Marcus ("Loria"), who is defendant's mother and Maness's daughter, was instructed by the investigating police officer to find defendant and bring him to the scene of the shooting. Loria found defendant and brought him to the scene, at which time defendant began crying and was taken to the Moore County Sheriff's Office. During the police investigation of the shooting, a canine unit tracked the money bag to a nearby church. The police also searched defendant's residence with the permission of defendant's father, and found money and a toboggan inside a doghouse on the premises.
The following day, defendant requested a meeting with the investigating detective. At the meeting, defendant signed a waiver of his Miranda rights and gave the detective a statement in which he admitted shooting his grandfather at least four times because his grandfather would not give him any money. Defendant stated that he wanted the money to buy crack cocaine.
Defendant was indicted on charges of first-degree murder, robbery with a dangerous weapon, breaking and/or entering, and larceny. Defendant was tried before a jury and convicted of first-degree murder, felony larceny, and breaking and/or entering. Defendant was sentenced to life imprisonment without parole. It is from this judgment and sentence that defendant appeals.
As an initial matter, we note that defendant's brief contains arguments supporting three of the original four assignments of error on appeal. The omitted assignment of error is deemed abandoned pursuant to N.C.R. App. P. 28(b)(6) (2004).
The issues presented on appeal are whether the trial court erred by (I) denying defendant's motion for a mistrial; (II) denying defendant's request for a jury instruction; and (III) imposing a mandatory life sentence for felony murder.
Defendant first argues that the trial court erred by denying defendant's motion for a mistrial where the prosecuting attorney told the jury during voir dire that the State was not seeking the death penalty against defendant. We disagree.
"[I]f there occurs during the trial an error or legal defect in the proceedings . . . resulting in substantial and irreparable prejudice to the defendant's case," the judge must declare a mistrial. N.C. Gen. Stat. § 15A-1061 (2003). "It is well settled that the decision of whether to grant a mistrial rests in the sound discretion of the trial judge and will not be disturbed on appeal absent a showing of an abuse of discretion." State v. Barts, 316 N.C. 666, 682, 343 S.E.2d 828, 839 (1986) (citation omitted). "[A] trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." Id.
Defendant may establish prejudice by proving that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a)(2003). The burden of showing such prejudice under § 15A-1443(a) is on the defendant. Id.
"[A]ny person who commits [first-degree] murder shall be punished with death or imprisonment in the State's prison for life without parole as the court shall determine pursuant to G.S. 15A-2000." N.C. Gen. Stat. § 14-17 (2003). The capital punishment statutes allow the State, at its discretion, to determine whether to seek the death penalty. N.C. Gen. Stat. § 15A-2004(a) (2003).
In the present case, during jury voir dire, the prosecuting attorney said that there was "good news," that the trial would not take a long time "since this is not a death penalty case."[1] Defendant contends that the prosecutor's statement "improperly informed the jury that defendant has already received a break," and "diminished the responsibility and the heightened sense of responsibility of the jury." The inference that defendant draws from the statement is not valid and cannot be supported.
The prosecutor's statement neither informs the jury that defendant received a break nor diminishes the jury's sense of responsibility. It merely informs the jury that the trial would be conducted as a noncapital first-degree murder case. The jury would have realized that this was a noncapital case in due course. Further, the State was not relieved of its obligation to prove each of the elements of the offense charged. For these reasons, we conclude that the prosecutor's statement was not improper. Thus, we hold that the trial court did not abuse its discretion by denying defendant's motion for a mistrial.
Defendant next argues that the trial court erred by denying defendant's request that the trial court use the term "diminished mental capacity" in lieu of the term "lack of mental capacity" in the jury instructions. This issue is not preserved for appellate review.
"A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection." N.C.R. App. P. 10(b)(2) (2004).
In the present case, it is clear from the transcript that during the jury instruction conference, defendant requested that the trial court change the language of the pattern jury instruction from "lacked mental capacity" to "diminished mental capacity." The trial court heard arguments from both parties on this issue and subsequently ruled that "the Court will use the term contained in the jury pattern instruction, quote, ' lacked mental capacity,' and denied the defendant's request to substitute the words 'possessed diminished mental capacity.'" Defendant did not object to the trial court's ruling at that time. Twice before the jury began deliberations, the trial judge asked if the parties had objections. Again, defendant failed to object to the trial court's ruling. Because defendant did not object at trial, this issue is not preserved for appellate review. We dismiss this assignment of error.
Defendant next argues that his mandatory sentence of life without parole for felony murder is unconstitutional. We disagree.
"The felony murder rule was promulgated to deter even accidental killings from occurring during the commission of or attempted commission of a dangerous felony." State v. Richardson, 341 N.C. 658, 666, 462 S.E.2d 492, 498 (1995). "[T]he elements necessary to prove felony murder are that the killing took place while the accused was perpetrating or attempting to perpetrate one of the enumerated felonies." Id.
A murder which shall be . . . committed in the perpetration or attempted perpetration of any . . . robbery . . . or other felony committed . . . shall be deemed to be murder in the first degree, a Class A felony, and any person who commits such murder shall be punished with death or imprisonment in the State's prison for life without parole.
N.C. Gen. Stat. § 14-17 (2003); see also N.C. Gen. Stat. § 15A-1340.17(c) (2003) (Punishment for a Class A felony is "life imprisonment without parole or death as established by statute.").
"North Carolina courts have consistently held that when a punishment does not exceed the limits fixed by statute, the punishment cannot be classified as cruel and unusual in a constitutional sense." State v. Stinnett, 129 N.C. App. 192, 200, 497 S.E.2d 696, 701 (1998) (citing State v. Rogers, 275 N.C. 411, 421, 168 S.E.2d 345, 350 (1969) and State v. Sweezy, 291 N.C. 366, 385, 230 S.E.2d 524, 536 (1976)). In challenging his sentence, defendant argues that "the standard used by North Carolina appellate courts to examine [Eighth Amendment, equal protection and due process] challenges has been nullified by the United States Supreme Court in Ewing v. California, 538 U.S. 11, 155 L. Ed. 2d 108 (2003) and Harmelin v. Michigan, 501 U.S. 957, 115 L. Ed. 2d 836 (1991)." We disagree.
In Ewing, the defendant was sentenced to twenty-five years to life for felony grand theft of property worth $1,200. The sentence was imposed as a result of defendant's third conviction under California's "three strikes" recidivism statutes, "after previously having been convicted of at least two `violent' or `serious' felonies." 538 U.S. at 28, 155 L. Ed. 2d at 122. The Supreme Court held that nothing in the Eighth Amendment prohibits California from enacting the three strikes law to protect the public safety from criminals who have been convicted of at least one serious or violent crime. 538 U.S. at 25-26, 155 L. Ed. 2d at 119-20.
In Harmelin, the defendant was convicted of possessing more than 650 grams of cocaine and sentenced to a mandatory term of life in prison without the possibility of parole. The defendant argued on appeal that his sentence was cruel and unusual because it was "significantly disproportionate" to the crime he committed, and because the judge was required by statute to impose the sentence. 501 U.S. at 961-62, 115 L. Ed. 2d at 843. The Supreme Court held that the term "cruel and unusual" does not refer to mandatory penalties which, although severe in some cases, are not unusual in the constitutional sense, "having been employed in various forms throughout our Nation's history." 501 U.S. at 994-95, 115 L. Ed. 2d at 864. The Court held that the purpose of the "cruel and unusual" clause was to disable "the Legislature from authorizing particular forms or 'modes' of punishment - specifically, cruel methods that are not regularly or customarily employed." 501 U.S. at 976, 115 L. Ed. 2d at 853.
The North Carolina General Statutes provide that defendant's conviction of felony murder constitutes a Class A felony, and such a felony is punishable by life imprisonment without parole. As discussed in Richardson, the North Carolina legislature enacted the felony murder rule "to deter even accidental killings from occurring during the commission of or attempted commission of a dangerous felony." 341 N.C. at 666, 462 S.E.2d at 498. The statute is the result of a deliberate policy choice by the legislature that individuals who intentionally or unintentionally commit murder in the course of committing a separate felony must be isolated from society in order to protect the public safety by serving life in prison. The mandatory life sentence requirement is a decision by the legislature to protect the public safety by incapacitating criminals who commit such violent crimes. Nothing in the Eighth Amendment prohibits our state from making that choice.
We hold that Stinnett continues to be good law. Defendant's sentence does not exceed the limits set by statute. Thus, we conclude that the mandatory sentence of life without parole for felony murder imposed on defendant is not unconstitutional.
We have considered all of defendant's assignments of error properly brought forward, and in the trial, conviction and sentencing of defendant, we find no prejudicial error.
NO ERROR.
Judges BRYANT and LEVINSON concur.
Report per Rule 30(e).

While the jury voir dire portion of the trial was not recorded, there is no dispute as to what the prosecutor said.